2000 UT Ct. App. 75

**Marilyn R. HALES, Plaintiff and Appellant,**

v.

**J. Jay OLDROYD, M.D.; and Nolan B. Money, Defendants and Appellees.**

No. 990288–CA.

Court of Appeals of Utah.

March 16, 2000.

Dexter L. Anderson, Millard County Deputy Attorney's Office, Fillmore, for Appellant.

Curtis J. Drake and Scott C. Sandberg, Snell & Wilmer, Salt Lake City, for Appellees.

Before BENCH, and DAVIS, JJ., and GARFF, S.J.[1]

### OPINION

GARFF, Senior Judge:

¶ 1 Marilyn Hales appeals the trial court's dismissal of her complaint against Dr. J. Jay Oldroyd and Dr. Nolan B. Money (the Doctors). The trial court dismissed Hales's claim without prejudice as a discovery sanction based on her numerous delays and failures to comply with discovery requirements.[2]

---

1. Senior Judge Regnal W. Garff sitting by special appointment pursuant to Utah Code Ann. § 78-2-4(2) (1996); Utah Code Jud. Admin. R3-108(4).

2. Generally, a dismissal without prejudice is not considered to be a final appealable order. In

Hales asserts on appeal that the trial court erred in dismissing her complaint based on a variety of procedural and substantive grounds. We affirm.

## BACKGROUND

¶ 2 Hales filed a complaint initiating this action in August of 1993. The complaint alleged counts of medical malpractice against the Doctors stemming from abdominal surgery they performed in April of 1987. In the initial complaint, Hales also named Mountain View Hospital (Mountain View) as a defendant because the operations took place at that hospital.

¶ 3 After its motion to dismiss based on lack of agent liability failed, Mountain View filed an answer and began to pursue discovery for its defense in August of 1994. Over the next several months, Mountain View served two sets of interrogatories on Hales. Hales filed for additional time to answer the first set, but even with additional time failed to properly respond. After Hales failed to completely answer Mountain View's first interrogatories and failed to respond at all to its second set of interrogatories, even after motions to compel and a court order commanding a response, Mountain View filed a motion to dismiss as a discovery sanction. The court granted Mountain View's motion in August of 1995, and dismissed Hales's complaint as to Mountain View, under Utah Rule of Civil Procedure 37.[3]

¶ 4 Meanwhile, the Doctors were also pursuing discovery for their defense, and were also experiencing difficulty getting prompt cooperation in discovery from Hales. The Doctors had requested that Hales sign several medical release forms which would enable them to obtain her medical records from out-of-state medical providers. The releases were requested by informal letter dated February 17, first requesting a response within approximately two weeks.

¶ 5 After receiving no response, the Doctors sent follow-up letters. The final letter notified Hales that if the releases were not received by April 3, the Doctors would file a motion to compel. The Doctors filed their first motion to compel discovery on April 11, 1995, asking the court to compel production of the release forms. Although not completely clear from the record, it appears that the Doctors actually received the releases before the filing of the motion to compel. No court action was taken on this motion.

¶ 6 The Doctors filed a second motion to compel on June 30, 1995. The second motion also concerned medical release forms requested from Hales. The Doctors requested additional releases by letter dated May 5, with the responses requested by May 16. A follow-up letter was sent on May 22, but still no response from Hales was received before the motion to compel. The Doctors filed a notice to submit for decision on August 4, 1995, noting that Hales had not filed a responsive memorandum.

¶ 7 On August 29, 1995, the court granted the Doctors' motion to compel. In the ruling, the court gave Hales twenty days from the signing of the order to provide the requested releases. Hales provided the releases within twenty days of the court's ruling, thereby complying with the court order.

¶ 8 The Doctors filed another motion to compel on July 30, 1998, asking the court to compel the production of medical records allegedly altered by defendants and their attorneys. Hales had made allegations of such alteration during her deposition on July 1, 1998. The Doctors' counsel requested that Hales produce the allegedly altered docu-

*Bowles v. Utah Department of Transportation,* 652 P.2d 1345 (Utah 1982), the Utah Supreme Court addressed the issue of whether a dismissal without prejudice could be a final order, and concluded: "The general rule seems to be whether the *effect* of the ruling is to finally resolve the issues." *Id.* at 1346. Here, because the complaint was dismissed as a discovery sanction, the order of dismissal disposed of the case and has the effect of a final order thus permit-

ting appellate review. *See, e.g., Schoney v. Memorial Estates, Inc.,* 790 P.2d 584 (Utah Ct.App. 1990) (affirming dismissal of plaintiff's claim when plaintiff failed to respond to discovery requests).

3. Hales did not file a response to either of Mountain View's motions to compel, nor did she file a response to its motion to dismiss. So, even the dismissal went unopposed.

ments at the deposition. Hales and her attorney refused to review the record to produce the altered documents, even though there were several binders of documents immediately available. The Doctors' counsel then discontinued the deposition, believing no further purpose would be served without the documents, and pursued a court order. Hales again did not file a response to the motion to compel the production of the allegedly altered documents.

¶ 9 The court held a hearing on several outstanding motions on August 26, 1998. At the hearing, the court granted the Doctors' motion to compel the documents. The court ordered Hales to produce "all documents which she contends have been altered in any manner by defendants, defendants' counsel, or any agent or employee of defendants' insurance company" within thirty days. Hales was further required to submit to a deposition by November 13. Additionally, sanctions were assessed against Hales for the cost of the motion to compel, including attorney fees. The court entered an order reflecting its ruling on September 14, 1998.

¶ 10 Also on September 14, the Doctors filed another motion to compel regarding additional medical release forms. The Doctors had requested the release forms by letter dated August 20, 1998. The letter specified no due date, but requested the forms as soon as possible. In response, by a letter dated August 25, Hales's attorney notified the Doctors that Hales was hospitalized out of state and unavailable to sign the forms immediately.

¶ 11 In their motion to compel, the Doctors stated that Hales refused to sign the forms. However, it did not address in any way the fact that Hales was out of the area. Furthermore, the motion was filed less than thirty days after the request for the releases was made, despite the thirty day time frame for responses permitted in discovery rules. On September 23, Hales filed an objection to the motion to compel, explaining not only that some of the records had been produced, but also that some of the release forms were not provided as alleged by the Doctors. The objection did not, however, raise any issue regarding the time frame of the motion to compel, or the informality of the request. Hales provided the medical releases, although it is not clear when she did so. The court took no action on this motion to compel, and it remained pending when the court dismissed Hales's complaint.

¶ 12 On November 25, 1998, the Doctors filed a motion for sanctions, asking the court to dismiss Hales's complaint under Rule 37 due to her failure to respond to discovery. Hales had not responded in any way to the court order to produce the allegedly altered documents. Hales did not file a response to the motion, so the Doctors filed a notice to submit for decision on December 8, 1998.

¶ 13 On December 10, 1998, the court signed a ruling granting the Doctors' motion for sanctions and dismissing Hales's complaint without prejudice "because of [Hales's] continued failure to comply with discovery requests." Hales's motion to set aside the default was denied. A final order reflecting the court's reasoning and ruling was entered on March 17, 1999.

¶ 14 In its order, the trial court noted "that plaintiff's counsel has established a consistent pattern and practice of not complying with discovery requests and other dilatory behavior." The court outlined the pattern, including failures to comply with discovery from both Mountain View, which had already been dismissed as a defendant, and from the Doctors. The court stated incorrectly that the motion to compel dated September 14, 1998 had been granted, but did properly note its filing. Finally, the court concluded "that the behavior of plaintiff in failing to comply with discovery requests was willful. The Court further finds that plaintiff has engaged in persistent dilatory tactics that have frustrated the judicial process." As a result, the court determined that dismissal was an appropriate sanction "based upon the willful behavior and the repeated practice of failure to comply with discovery requests." Hales appeals this order.

## ISSUE AND STANDARD OF REVIEW

[3, 4] ¶ 15 At issue is whether the trial court abused its discretion in dismissing Hales's complaint as a discovery sanction. Dis-

covery sanctions, including dismissal of a complaint or entry of default judgment, are permitted under Rule 37 of the Utah Rules of Civil Procedure.[4] Trial courts have broad discretion in determining discovery sanctions " '[b]ecause trial courts must deal first hand with the parties and the discovery process.' " *Utah Dep't of Transp. v. Osguthorpe*, 892 P.2d 4, 6 (Utah 1995) (citation omitted). Thus, appellate courts will interfere with the exercise of such discretion only when " ' "abuse of that discretion [is] *clearly* shown." ' " *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (alteration and emphasis in original; citations omitted).

¶ 16 As an initial matter, before imposing sanctions under Rule 37, "the court must find on the part of the noncomplying party willfulness, bad faith, or fault, or persistent dilatory tactics frustrating the judicial process." *Id.* (internal citations and quotation marks omitted). Once the court makes this threshold finding, " '[t]he choice of an appropriate discovery sanction is primarily the responsibility of the trial judge.' " *Id.* (quoting *First Fed. Sav. & Loan Ass'n v. Schamanek*, 684 P.2d 1257, 1266 (Utah 1984)). We will find an abuse of discretion in a trial court's choice of sanction only when "there is either 'an erroneous conclusion of law or . . . no evidentiary basis for the trial court's ruling.' " *Id.* (alteration in original; citation omitted).

## ANALYSIS

¶ 17 Hales first argues the trial court erred in dismissing her complaint under Rule 37 because she did not violate any. court order compelling discovery, nor did she completely fail to comply with discovery requests. She asserts that dismissal of a claim as a discovery sanction under Rule 37(d) requires a complete and utter failure to comply with discovery, and because she complied

with all court orders and discovery requests, dismissal is precluded. We disagree.

¶ 18 First, even if her claim was dismissed solely under Rule 37(d), with no court order in play, Hales overstates the required findings for discovery sanctions. To warrant sanctions for failure to comply with discovery, a trial court must first determine that one of the following circumstances exist: "(1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process." *Morton*, 938 P.2d at 276. Once this initial determination is made, the full range of options for sanctions under Rule 37 is available, and the trial court has broad discretion to select which sanction to apply in the circumstances. *See id.* at 274. No finding of a "complete failure" to comply with discovery is required. Indeed, dismissal as a discovery sanction has been upheld for late or incomplete discovery responses. *See, e.g., id.* at 275; *W.W. & W.B. Gardner, Inc. v. Park West Village, Inc.*, 568 P.2d 734 (Utah 1977) (affirming default judgment when defendant failed to respond to discovery although answers were tendered prior to sanction hearing); *Schoney v. Memorial Estates, Inc.*, 790 P.2d 584 (Utah Ct.App.1990) (affirming dismissal of plaintiff's claim when plaintiff failed to timely respond to discovery requests but produced information at hearing).

¶ 19 Second, the trial court clearly relied in part on Hales's failure to comply with a court order under Rule 37(b)(2)(C) in dismissing her claim. The court granted the Doctors' motion to compel allegedly altered documents on August 26, 1998, with a corresponding formal order filed on September 14. Pursuant to the order, Hales was required to produce such documents within thirty days of

---

4. Rule 37 provides the procedures for motions to compel discovery when a party fails to properly respond to discovery requests. *See* Utah R. Civ. P. 37(a). Evasive or incomplete answers are considered a failure to respond. *See id.* 37(a)(3). The rule also grants trial courts the authority to impose sanctions for failure to comply with court orders compelling discovery, *see id.* 37(b)(2), or for failure to provide appropriate responses dur-

ing discovery even without a court order. *See id.* 37(d). When sanctions are warranted, the court "may make such orders in regard to the failure as are just," including "an order striking out pleadings or parts thereof, . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." *Id.* 37(b)(2)(C).

August 26. She did not respond in any way to the court order. Thus, she was subject to sanctions within the scope of Rule 37(b)(2)(C) for failure to comply with a court order.

¶ 20 Hales argues that she did not violate the court order, however, because no altered documents existed, thus she had no obligation to respond to the court order for production. She asserts the only required response was the production of documents, and if none existed, no other response was necessary. We disagree. The order compelling production of the records was essentially an order demanding a response to discovery, not requiring document production only. *Cf. Preston & Chambers, P.C. v. Koller,* 943 P.2d 260, 262 (Utah Ct.App.1997) (noting summary judgment ruling "inarguably compelled discovery"). The order can be read as a court request for records pursuant to Rule 34 of the Utah Rules of Civil Procedure, setting out the procedures for document production.

¶ 21 Under Rule 34, the party from whom documents are requested "*shall* serve a written response within 30 days." Utah R. Civ. P. 34(b) (emphasis added). The court may allow a longer or shorter time, *see id.,* but the court order here specified the thirty day limit. The written response must state that inspection will be granted "unless the request is objected to, in which event the reasons for the objection shall be stated." *Id.* Thus, *some* response is required within thirty days, not only an affirmative response.

■ ¶ 22 If Hales did not have the documents, she was required to state so in a written response. Such a response would serve to notify the Doctors that she had searched for the documents as required, but found none, and that the discovery process may continue.[5] Hales's lack of response cannot be interpreted as meaning that no documents existed, as she argues, especially in these circumstances in which Hales frequently failed to respond to requests. The failure to respond in writing to a discovery request

is not excused on the basis that the discovery is objectionable absent a written objection or motion for a protective order under Rule 26(c). *See Tuck v. Godfrey,* 1999 UT App 127, ¶ 27, 981 P.2d 407, *cert. denied,* 984 P.2d 1023 (Utah 1999). Simply ignoring the request does not count as a response or an objection.

¶ 23 Thus, Hales did indeed violate a court order compelling discovery when she failed to respond in any way to the order demanding that she produce any altered documents she found. Even if she found no documents, she was required to notify the Doctors of that fact through a written response to discovery. Because she violated the court order, she was within the scope of Rule 37(b) providing for discovery sanctions for the failure to comply with a court order.

■ ¶ 24 Hales next argues that she did not have "possession, custody or control" of the requested documents, and thus had no obligation to produce them. *See* Utah R. Civ. P. 34(a)(1) (permitting discovery requests for production of documents to those in "possession, custody or control" of such documents). However, Hales did not object to the discovery requests when made, nor did she raise this issue in response to the corresponding motions to compel the releases. "Any challenge to the merits of a discovery request must be timely filed and put before the trial court, or the claim will be waived." *Tuck,* 1999 UT App 127 at ¶ 28, 981 P.2d 407. Because she did not raise any objection to discovery before the trial court, she has waived this issue.

■ ¶ 25 Hales also argues that the requests for medical releases were informal requests, and thus fall outside the scope of the rules. She argues that, as a result, any discovery sanctions were inappropriate. However, once again Hales failed to object to the form of the requests at the trial court level, even though she had three separate motion to compel occasions to raise the ob-

---

5. Hales's deposition was postponed pending the production of the altered medical records because she raised the allegations in her first deposition. Notification that no documents had been found would permit the taking of Hales's deposition, because they would no longer be waiting for

the documents. Also, the acknowledgment that no altered records were found would permit the Doctors to prepare a response to the allegations, knowing they were unsupported by documentary evidence.

jection. Thus, this claim is also waived. *See id.*

¶ 26 Hales next argues that the court erred by considering her failures to reply to Mountain View's discovery requests in dismissing her claim against the Doctors. We think that dismissal of Mountain View as a defendant properly addressed Hales's failure to respond to Mountain View's interrogatories. However, after reviewing the record, we conclude that the trial court was justified in dismissing Hales's claim against the Doctors as a discovery sanction even based solely on her behavior regarding the Doctors.

¶ 27 In the five years between when Hales filed her claim against the Doctors and the trial court's dismissal of her complaint, Hales has shown little interest in diligently pursuing her cause of action. She bears "the primary responsibility for moving the case along." *Schoney,* 790 P.2d at 586; *see also Morton,* 938 P.2d at 275. Rather than prosecuting her case efficiently, however, she has delayed in responding to discovery, failed to comply with a court order, failed to timely file pleadings, and failed to provide specific witness lists in a timely manner.

¶ 28 In addition to her violation of a court order compelling discovery as discussed above, Hales has continually delayed in responding to discovery requests, leading to multiple motions to compel. Though eventually she provided the medical releases requested in each instance, such a pattern of delays resulted in an unnecessary waste of judicial resources in dealing with the motions to compel. Moreover, Hales requested multiple extensions of time to file appropriate pleadings, including her answers to the Doctors' first set of interrogatories, a response to a summary judgment motion, and a response to the Doctors' motion to bifurcate the trial. These were in addition to the times she failed to respond at all to motions before the court, including the final motion to dismiss as a discovery sanction.

¶ 29 Furthermore, Hales did not produce a sufficient witness list until the third deadline was imposed by court order. The first witness list was non-specific and unhelpful in determining a discovery plan. It merely listed medical providers over the course of a ten year span, stating some on the list may be called. In response to a court order requiring a proper witness list, identifying those who would be called and those who may be called and under what circumstances, Hales produced a list of thirteen witness and thirty-four possible witnesses. Again, however, she failed to provide a description of the circumstances under which the witnesses would be called. Finally, over one year after the first witness list was produced, Hales provided a sufficient witness list.

¶ 30 Over the duration of this case, it is apparent that Hales's failures and delays in responding to discovery slowed the progress of her case and impeded the Doctors' ability to develop a defense. The trial court found that "plaintiff's counsel has established a consistent pattern and practice of not complying with discovery requests and other dilatory behavior." Also, the court noted "that the behavior of plaintiff in failing to comply with discovery requests was willful." Finally, the court found "that plaintiff has engaged in persistent dilatory tactics that have frustrated the judicial process." The findings are sufficiently supported by Hales's consistent failures and delays in meeting her discovery obligations, even without considering her failures regarding Mountain View.[6] Thus, we conclude the court did not abuse its discretion in dismissing Hales's complaint as a discovery sanction.

¶ 31 Finally, Hales argues that dismissing her complaint violates her constitutional rights. We disagree. Hales has had ample opportunity to pursue her claim; all she had to do was respond appropriately to discovery to avoid this end. After repeated motions and court orders, she continued, five years after filing the complaint, to engage in behavior causing delays and frustration of the judicial process. Although parties de-

---

**6.** Hales also alleges that the court considered her assertion of attorney-client privilege regarding her former attorney in dismissing her claim. However, there is no mention of this in the court order, thus we disregard it. Also, Hales attempts to deflect responsibility for the duration of this case to defendants and their motion practice. However, defendants were diligently pursuing a defense rather than merely failing to meet discovery obligations and delaying the judicial process, as Hales has done.

serve the opportunity to be heard, "dismissal ... is appropriate when a party pursues a claim in a manner that abuses that opportunity." *Preston & Chambers, P.C. v. Koller,* 943 P.2d 260, 263 n. 2 (Utah Ct.App.1997).

## CONCLUSION

¶ 32 In sum, the trial court did not err in dismissing Hales's complaint as a discovery sanction. First, we reject Hales's interpretation of Rule 37 and compliance with a court order. The court made the required preliminary findings of willfulness and dilatory behavior to support sanctions under Rule 37. Once the threshold finding is made, the choice of sanction is within the discretion of the trial court. We conclude the trial court did not abuse its discretion in dismissing Hales's complaint based on ample evidence in the record of her multiple delays and failures to respond to discovery requests and court orders. Furthermore, Hales waived any objections to procedural matters or merits of the discovery requests. Finally, we conclude that dismissal did not violate her constitutional rights because she had ample opportunity to present her case had she only chosen to do so, rather than abuse the opportunity by following a course of conduct frustrating the judicial process. Accordingly, we affirm.

¶ 33 WE CONCUR: RUSSELL W. BENCH, Judge, and JAMES Z. DAVIS, Judge.

