IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Christina Allen, | ) | OPINION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20110009-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 1, 2012) |
| James N. Ciokewicz, | ) | |
| | ) | 2012 UT App 162 |
| Respondent and Appellant. | ) | |

-----

Fifth District, St. George Department, 084500232
The Honorable James L. Shumate

Attorneys:     Guy L. Black, Provo, for Appellant
               Gary G. Kuhlmann and Nicolas David Turner, St. George, for Appellee

-----

Before Judges McHugh, Voros, and Davis.

McHUGH, Presiding Judge:

¶1     James N. Ciokewicz (Husband) appeals from the Decree of Divorce entered by the trial court, arguing that the court erred in striking his answer and entering a default judgment in favor of Christina Allen (Wife). Husband further asserts that he did not receive constitutionally adequate notice of the property division hearing. In addition, Husband claims that the trial court erred by failing to classify property as marital or separate, by failing to divide the marital property equitably, and by awarding attorney fees to Wife. We affirm in part, and reverse and remand in part.

¶2     Husband and Wife married on June 13, 1987; they had no children together. Throughout the twenty-one-year marriage, Husband received federal disability income and Wife worked outside the home. Wife filed a petition for divorce on March 7, 2008. While the divorce was pending, Wife lived at the couple's marital home in Washington County and Husband moved to California, where the couple had lived before moving to Utah.

¶3     In her petition, Wife asserted that Husband's physical abuse forced her to flee the marital home temporarily and enter a domestic violence shelter.[2] Wife further alleged that while she was at the shelter, Husband disposed of "virtually all of [her] personal belongings and clothing." On March 17, 2008, Husband filed an answer and a motion requesting possession of the marital home until it could be sold, temporary distribution of the marital property, and temporary support. Husband indicated that he had been disabled since 1984, was unable to work, and relied solely on disability income of $1,225 per month. Wife conceded that the marital home should be sold, but she otherwise opposed Husband's motion. Wife claimed that she had no funds available to provide Husband with temporary support because she was paying the couple's expenses, including the mortgage on the marital home. Wife also asserted that Husband was able to work.

¶4     On April 7, 2008, Husband requested that his motion for temporary support be submitted for decision or hearing. In addition, Husband filed a notice of pendency of action (lis pendens) claiming an equitable interest in the marital home, which was titled only in Wife's name. Subsequently, Husband and Wife stipulated to a discovery schedule, and Husband filed his initial disclosures. On May 5, 2008, Wife served Husband with notice that she would take his deposition on June 11, 2008. Husband sought permission from the trial court to pay his deposition costs and attorney fees

---

[1]We set forth the trial court proceedings in some detail because they are relevant to our review of Husband's challenge to the trial court's decision to strike his answer and enter default against him.

[2]Wife returned to the marital home after the trial court issued a protective order and Husband moved to California.

from a marital savings account, claiming that he had a fixed income of approximately $1,000 a month in disability income and that he was homeless.

¶5 On May 16, 2008, Husband filed a divorce petition in California. He then sought a temporary restraining order in the California action, asking for use of the marital home and claiming that Wife was abusive. The California court denied the motion and dismissed the divorce petition, concluding that Utah had properly exercised jurisdiction over the divorce and, thus, California did not have jurisdiction.

¶6 On May 30, 2008, Husband moved to reschedule the Utah deposition, mediation, and a hearing on temporary orders because he was unable to travel due to "serious medical conditions." Husband attached a doctor's note, stating that he was suffering from "stress and depression and going through a lot of hardship and unable to travel for at least 90 days while going through treatments." On June 3, Husband filed a supplemental motion with a second doctor's note explaining that Husband had been undergoing treatment since March 24, 2008, for "Clinical Depression, Hypertension, Neck and Back Pain." In the note, the doctor stated, "I do not feel he is capable of facing more stress or be[ing] placed in an environment he may deem hostile." The trial court denied the motion to reschedule the deposition and refused to continue the hearing.

¶7 Nevertheless, the parties stipulated to move the deposition, mediation, and hearing to August. One day before the scheduled August 6 deposition, Husband sought a continuance. The court denied the motion, and Husband failed to appear. Husband's counsel stated on the deposition record that Husband did not appear because of "serious [health] conditions" and a lack of financial means. When counsel also indicated that Husband would not attend the mediation scheduled for the next day, Wife canceled it.

¶8 On August 8, 2008, Husband moved to disqualify the trial judge on the ground that the judge was biased against him. As a result, the hearing on Husband's motion for temporary orders was postponed so that the associate presiding judge of the Fifth District Court could review and decide the motion to disqualify. *See* Utah R. Civ. P. 63(b)(2) (requiring a judge who is the subject of a motion to disqualify to discontinue ruling on any motions and forward the motion to disqualify to a different judge for review). After the reviewing judge denied the motion to disqualify, the trial court

denied Husband's motion for payment of deposition costs and attorney fees from the marital savings account.

¶9     In response, Husband again turned to the California courts, where he filed another temporary restraining order, seeking to enjoin Wife from occupying the marital home.  Then, on November 18, 2008, Husband filed a claim for his marital interest in Wife's California Public Employees' Retirement System (CalPERS) account.  As a result, CalPERS began withholding one-half of Wife's monthly allowance of retirement pension benefits and declined to release the funds to Wife without a court order.

¶10     Meanwhile, the Utah proceedings continued.  Husband failed to appear at a November 25, 2008 hearing on his motion for temporary orders.  At the hearing, Wife acknowledged that she had used money from a marital account to make home repairs, to replace clothing and personal belongings taken by Husband, and to pay her attorney fees.  She also testified that she earned roughly $1,600 each month through her employment and reported that Husband's disability income was $1,400 a month.[3]  Wife did not know whether Husband was working but claimed he was able to do so.  Wife further testified that she was paying all the marital bills, including the mortgage and utilities on the marital home, as well as the insurance and registration on the automobile, all-terrain vehicle (ATV), and trailer that Husband had taken with him to California.  Wife indicated that she also paid some of Husband's cellular telephone bills after the separation.  At the conclusion of the hearing, the trial court awarded wife temporary use of the marital home and denied Husband's request for temporary support.

¶11     On January 5, 2009, Wife filed an ex parte motion with the Utah court to reinstate her full retirement payments from the CalPERS account.  Wife argued that Husband had misrepresented the nature of the divorce action to CalPERS and had also violated a Utah order to preserve the marital assets.  According to Wife, she needed the retirement funds to pay the mortgage and other bills.  Husband responded that he was merely trying to preserve his one-half interest in the CalPERS account.  The trial court scheduled a hearing on the matter for January 30, 2009.

---

[3]The figure in Husband's answer was $1,225 per month and his subsequent representation to the trial court was that the disability benefit was approximately $1,000 per month.

¶12    Claiming financial hardship, Husband asked the court to continue the hearing to a date closer to February 11, when he had arranged a ride to Utah for a hearing in a separate action. Wife opposed the motion, disputing Husband's financial hardship claim and providing an affidavit of a witness who claimed to have seen Husband outside the St. George courthouse on a day he failed to appear at a hearing in the protective order case. Husband sent the trial court a letter on January 28, 2009, in which he claimed to be "physically unable to attend" the January 30 hearing because of "excoriating [sic] abdominal and back pain." Husband attached a January 23, 2009 hospital discharge form. The trial court issued an ex parte order that required Husband to facilitate the reinstatement of Wife's retirement benefits, and rescheduled the hearing to June 9, 2009.

¶13    On March 11, 2009, Wife moved to strike Husband's answer and for the entry of a default judgment under rule 37 of the Utah Rules of Civil Procedure. She argued that Husband had "willfully failed to participate in discovery or in prosecuting" the case, and instead had "engaged in persistent dilatory tactics." Wife noted that while claiming he was unable to engage in the Utah proceedings, Husband had actively litigated in California by filing a divorce petition, seeking protective orders, and freezing the CalPERS account. Although each of Husband's California proceedings had been unsuccessful, Wife stated that they had cost her over $10,000 to defend. Husband filed a response, asserting that he had not attended the deposition because of his doctor's advice that he was "unable to travel safely." He further argued that the California litigation was based on the advice of his California attorney and that the Utah trial court lacked jurisdiction to determine whether the California actions were frivolous.

¶14    On June 9, Husband failed to appear at the hearing regarding the CalPERS account. Husband's counsel informed the trial court that while en route to Utah, Husband had been hospitalized in Mesquite, Nevada. Thereafter, Wife twice supplemented her motion to strike Husband's answer, first with a complaint to the Utah State Bar that Husband had filed against Wife's counsel, and next with a motion for a restraining order that he had filed against Wife in California. Shortly thereafter, Husband's Utah attorney withdrew.

¶15    The trial court continued the hearing on Wife's motion to strike Husband's answer and enter a default until August 25, 2009, to allow Husband time to retain new counsel. In a pro se letter to the court dated August 18, but filed August 24—only one

day before the hearing—Husband requested another continuance due to a scheduling conflict with a California action against Wife. In addition, Husband informed the trial court that he planned to file for bankruptcy protection and also asked that he be permitted to appear by telephone. Husband attached several documents, including a request for $25,000 from the marital account to pay his attorney fees.

¶16    When Husband did not appear at the default hearing on August 25, 2009, the trial court struck his answer and entered a default judgment against him. However, because Husband had filed for bankruptcy, the trial court entered a bifurcated decree that granted the divorce but stayed the property division pending relief from the automatic stay triggered by the bankruptcy proceedings. In its Findings of Fact and Conclusions of Law, the trial court outlined Husband's various failures to participate in the Utah litigation due to illness, while being "very active" in California, including filing for divorce, filing for protective orders, suing wife and witnesses for defamation, and interfering with the CalPERS account. The trial court found that Wife had incurred $10,000 in fees and costs to defend these actions. It also found that Husband had "not complained of any pain nor appeared to be in pain" when he did appear before the Utah court, and that his medical condition did not prevent him from "pursuing multiple actions . . . in California."[4] Based on those findings, the trial court concluded that Husband had "willfully failed to participate in discovery," had "willfully failed to participate in prosecuting [his] case," and had "willfully engaged in dilatory tactics," without providing a reasonable justification.

---

[4]In addition, the trial court purportedly "found" that Husband's claim of "[clinical] depression and other maladies" was unpersuasive because these conditions "can be easily treated." However, the trial court did not take any evidence on that issue, and even a cursory review of medical publications calls into question the trial court's opinion. "Despite the large number of depressed patients who do not respond to first-line antidepressants, the evidence base of alternative strategies is quite thin." *See* Michael E. Thase, *Therapeutic Alternatives for Difficult-to-Treat Depression: A Narrative Review of the State of the Evidence*, CNS Spectrums 808, 808 (2004), *available at* http://mbldownloads.com/1104CNS_Thase.pdf.

¶17    On September 17, 2009, Husband filed a pro se motion for reconsideration of the default judgment.[5]  Husband reiterated that he suffered from various medical conditions and received limited disability income.  He also tried to justify the California filings, stating, "I can't get any justice whatsoever in Utah."  Finally, Husband disputed the affidavit testimony that he was at the courthouse in Utah on the day he failed to appear at a scheduled hearing, claiming that he had been hospitalized in Auburn, California, on the date in question.

¶18    The bankruptcy court lifted the automatic stay on September 21, 2010, and Husband moved for a status conference in the Utah divorce action so that he could assert his "one-half interest in the marital property [which he estimated to have] a value of approximately $300,000."  Husband also indicated that he would soon receive a physician's report stating that he was physically unable to travel.

¶19    On October 20, 2010, the trial court notified the parties that "a hearing regarding the conclusion of divorce proceedings" would be held on November 2, 2010.  Before the hearing, Husband filed a pro se motion requesting that the trial court set a discovery schedule and grant a continuance.  Relying on concerns about an outstanding arrest warrant against him, health issues, and his "semi-homeless" lifestyle, he asked to appear by telephone.[6]  The trial court continued the "property settlement hearing" to November 9, 2010.  On November 8, Husband submitted a second pro se request to appear by telephone.  Husband stated that he would not come to Utah.

¶20    As promised, Husband did not appear at the property division hearing, and the trial court did not allow him to appear by telephone.  The trial court entered oral findings that Husband had adequate notice of the proceedings, had made "repeated efforts to frustrate the process of this court," and had failed to provide "adequate proof" of disability that would prevent him from attending.  In its written Findings of Fact and Conclusions of Law, the trial court also found that Husband had been abusive during

---

[5]Husband also requested a copy of Wife's motion to strike his answer and enter a default, and questioned whether a default judgment had been entered.

[6]The record indicates that Husband was ordered by the Utah trial court to serve a jail sentence.  Although it is not clear from the record, the jail sentence is apparently related to an order of contempt arising out of the Utah protective order proceedings.

the marriage, that Wife had acquired real and personal property during the marriage, including the marital home, three vehicles, an ATV, a trailer, home furnishings, and a television, and that Wife had incurred $20,000 in costs and attorney fees defending against Husband's California actions.

¶21 Without further discussion of the marital estate, the trial court awarded Wife the marital home, all three vehicles, the ATV, the trailer, all joint and separate financial accounts, all retirement accounts in her name (including 100 percent of the CalPERS account), all life insurance policies, a large-screen television, all personal property and home furnishings, other accounts, and cash and interest held in her name or in her physical possession. Husband received his clothes and other personal property in his possession, all accounts, cash, and other interests held solely in his name, and the couple's dogs. Husband timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶22 First, Husband argues that the trial court exceeded its discretion when it struck his answer and entered default judgment against him. "As a general rule, district courts are granted a great deal of deference in selecting discovery sanctions, and we overturn a sanction only in cases evidencing a clear abuse of discretion." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957.

¶23 Second, Husband contends that he did not receive constitutionally adequate notice or an opportunity to appear at the property division hearing. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

¶24 Third, Husband challenges the trial court's distribution of property. "'A trial court has considerable discretion concerning property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity.'" *Jensen v. Jensen*, 2009 UT App 1, ¶ 6, 203 P.3d 1020 (alteration in original) (additional internal quotation marks omitted) (quoting *Elman v. Elman*, 2002 UT App 83, ¶ 17, 45 P.3d 176).

¶25     Finally, Husband asserts that the trial court erred in awarding Wife attorney fees without receiving evidence as to the reasonableness of those fees. "We review a trial court's attorney fees award in divorce proceedings for abuse of discretion." *Id.* ¶ 7.


ANALYSIS

## I.  The Trial Court Did Not Exceed Its Discretion in Striking Husband's Answer and Entering His Default

¶26     Husband argues that the trial court exceeded its discretion by striking his answer and entering his default. Wife argues that we should not consider this claim because Husband did not preserve it. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (explaining that issues that are not raised before the trial court are waived unless the appellant can show plain error or exceptional circumstances). To preserve an issue for appeal, an appellant must present it to the trial court "in such a way that the trial court has an opportunity to rule on that issue." *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (internal quotation marks omitted). The preservation requirement gives the trial court "notice of the asserted error and allows for correction at that time in the course of the proceeding." *See id.* Thus, an issue is preserved only if (1) it is "raised in a timely fashion," (2) it is "specifically raised," and (3) "supporting evidence or relevant legal authority" is introduced. *See id.* (internal quotation marks omitted).

¶27     Relying on our decision in *Moa v. Edwards*, 2011 UT App 140, 256 P.3d 242 (mem.), *cert. denied*, 262 P.3d 1187 (Utah 2011), Wife claims that Husband did not challenge the trial court's findings regarding his "willfulness, bad faith, fault or persistent dilatory tactics" (collectively, willfulness) in the trial court. In *Moa*, the trial court excluded a party's witnesses as a discovery sanction without first finding that the party had willfully failed to disclose the witnesses. *See id.* ¶ 2. Because the party did not notify the trial court that it must make such a finding, we concluded that the issue had not been preserved. *See id.* In the present case, the trial court specifically found that Husband acted willfully before striking his answer and entering default. Thus, *Moa* is inapposite. The issue here is whether the willfulness finding is clearly erroneous, not whether the trial court failed to make such a finding before imposing sanctions.

¶28    Husband preserved his argument that he did not act willfully.  Husband argued that striking his complaint was an excessive sanction because his medical condition caused him to miss the deposition, and that the Utah court could not assess the frivolousness of the California actions.  Furthermore, the trial court ruled on the issue, concluding that Husband's medical complaints were a pretext for his willful refusal to participate in the Utah proceedings.[7]  *See generally Pratt v. Nelson*, 2007 UT 41, ¶ 24, 164 P.3d 366 (holding that where the trial court actually addressed the issue, it was adequately brought to its attention).  Because Husband presented his argument "in such a way that the trial court had an opportunity to rule on that issue," it is preserved.  *See Moa*, 2011 UT App 140, ¶ 2 (brackets and internal quotation marks omitted).

¶29    To the extent that Husband preserved his claim for appeal, Wife next argues that he did not marshal the evidence to support his argument as required by our rules.  *See* Utah R. App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding.").  "[P]arties that fail to marshal the evidence do so at the risk that the reviewing court will decline, in its discretion, to review the trial court's factual findings."  *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 19, 164 P.3d 384.

¶30    Proper marshaling requires an appellant to "play the devil's advocate" by "temporarily remov[ing] its own prejudices and fully embrac[ing] the adversary's position."  *Chen v. Stewart*, 2004 UT 82, ¶ 78, 100 P.3d 1177 (internal quotation marks omitted).  "Appellants cannot merely present carefully selected facts . . . in support of their position."  *Id.*  Nor can appellants "shift the burden of marshaling by falsely claiming that there is no evidence in support of the trial court's findings."  *Id.*

¶31    Husband not only omits relevant facts that are contrary to his position, he also falsely states that "Wife never directly controverted" his claim that he "was unable to travel safely because of certain medical conditions."  While Wife did concede that Husband received federal disability payments, she contested Husband's claims that his disability was so severe that he was unable to work or travel.  For example, during the hearing on temporary orders, Wife argued that Husband was able to work, and she was

---

[7]Husband also argues that the only conduct relevant to the trial court's decision to enter his default was his failure to appear at the deposition.  Because Husband did not make this argument to the trial court, it is unpreserved and we do not consider it.

prepared to present a witness on the matter.[8]  Wife also provided the affidavit of a witness who reported that she had seen Husband outside of the St. George courthouse on a day he claimed to be hospitalized.  Another example of Husband's failure to marshal can be seen in his limited recitation of his active participation in other litigation.  While acknowledging the bankruptcy petition and California "actions" seeking "retirement benefits and . . . restraining orders," Husband fails to mention that those "actions" also included a separate divorce petition, a defamation action, and an attempt to attach the CalPERS account after the Utah court ordered that Wife's payments be reinstated.[9]  Because Husband failed to marshal the evidence supporting the trial court's findings, we need not consider his argument that the trial court's Findings of Fact and Conclusions of Law are unsupported by the evidence.  *See Martinez*, 2007 UT 42, ¶ 19.

¶32    Husband also challenges the trial court's choice of sanction.  Where the trial court finds that a party acted willfully, rule 37 of the Utah Rules of Civil Procedure allows it to impose sanctions.  *See Hales v. Oldroyd*, 2000 UT App 75, ¶ 16, 999 P.2d 588.  "Once the court makes this threshold finding, the choice of an appropriate discovery sanction is primarily the responsibility of the trial judge."  *Id.* (brackets and internal quotation marks omitted).  Even though dismissing an action is "one of the most severe of the potential sanctions that can be imposed, it is clear from the language of rule 37 that it is within a trial court's discretion to impose such a sanction."  *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (citation and internal quotation marks omitted).  "Our deferential review recognizes that trial courts must deal first hand with the parties and the discovery process."  *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (internal quotation marks omitted).  Thus, "we overturn a sanction only in cases evidencing a clear abuse of discretion."  *Id.*  A trial court does not abuse its discretion in choosing a sanction unless "there is either an erroneous conclusion of law or . . . no

---

[8]Instead of hearing Wife's witness, the court concluded that it had all of the information needed on the matter because Wife testified that Husband had traveled to hunt big game while receiving disability payments during the marriage.

[9]Husband also declines to mention that his numerous unsuccessful attempts at obtaining restraining orders were apparently efforts to order Wife to vacate the marital home.

evidentiary basis for the trial court's ruling." *See Hales*, 2000 UT App 75, ¶ 15 (omission in original) (internal quotation marks omitted).

¶33    Under these facts, the trial court did not exceed its broad discretion in striking Husband's answer and entering his default. The trial court concluded that Husband had "willfully failed to participate in discovery" and "in prosecuting [his] case"; and that Husband had "willfully engaged in dilatory tactics" in order to delay the proceedings, to cause Wife to incur fees and costs, and to allow Husband to bring "repetitive, unsupported actions" in California. The trial court further concluded that Husband had not provided any "reasonable justification for his failure to appear" at hearings, or at the scheduled mediation and deposition. Where Husband has not properly challenged these findings, we cannot conclude that the trial court exceeded its discretion by striking his answer and entering default.

## II. Husband Had Actual Notice of the Property Division Hearing

¶34    Husband next argues that he did not receive constitutionally adequate notice of the property division hearing, and that by not continuing the hearing or allowing him to appear by telephone, the court violated his right to due process. First, we conclude that Husband had actual notice of the purpose of the hearing. Second, we determine that the trial court did not abuse its discretion in declining to continue the hearing. Finally, we do not address Husband's claim that he should have been allowed to appear telephonically because he has not adequately briefed that claim.

### A. Husband Admitted that He Had Notice of the Hearing

¶35    The notice of the November 2, 2010 hearing states that "a hearing regarding conclusion of divorce proceedings in the above-captioned matter will be held on November 2, 2010." Husband argues that this notice violated his due process rights because it did not inform him that the purpose of the hearing was to divide the marital property.

¶36    At a minimum, due process requires "adequate notice and an opportunity to be heard in a meaningful manner." *Chen v. Stewart*, 2004 UT 82, ¶ 68, 100 P.3d 1177 (citing *Dairy Prod. Servs., Inc. v. City of Wellsville*, 2000 UT 81, ¶ 49, 13 P.3d 581). Husband's response to Wife's motion to conclude the proceedings leaves little doubt that he was

aware of the purpose of the "conclusion of divorce proceedings." He requested further discovery and acknowledged that his "interest in the marital property" was at stake. After the trial court rescheduled the hearing to November 9, Husband filed another response, stating, "[I]f I don't come, I will be denied my ½ interest" in the marital assets. Thus, Husband's own submissions indicate that he had actual notice of the purpose of the November 9 hearing.

B.  The Trial Court Did Not Deny Husband Due Process

¶37    Husband next argues that the trial court did not provide him a meaningful opportunity to be heard because it did not continue the property division hearing or allow him to appear by telephone. Husband stated that his health condition, fear of arrest, and dire financial straits rendered him unable to appear in court. In addition, Husband sought time to retain local counsel. Although he attached some evidence of his medical condition, the trial court was not persuaded by it.

¶38    The trial court "has broad latitude to control and manage the proceedings and preserve the integrity of the trial process." *Pitt v. Taron*, 2009 UT App 113, ¶ 5, 210 P.3d 962 (internal quotation marks omitted). "In fulfilling this role, the trial court is responsible for carrying [the proceedings] forward as efficiently and expeditiously as possible consistent with fairness and thoroughness in administering justice." *Id.* (internal quotation marks omitted). Thus, the decision of whether to grant a motion to continue is within the trial court's discretion, and we will "not disturb the decision unless it was 'clearly unreasonable and arbitrary.'" *See Holbrook v. Master Prot. Corp.*, 883 P.2d 295, 298-99 (Utah Ct. App. 1994) (quoting *Page v. Utah Home Fire Ins. Co.*, 15 Utah 2d 257, 391 P.2d 290, 293 (1964)) (affirming the trial court's denial of a motion to continue trial).

¶39    While additional time may have allowed Husband to find new counsel, in the context of this case, we are not persuaded that the court exceeded its discretion by declining to grant a continuance. By the time Wife filed the motion to conclude the proceedings, the divorce action had been pending for nearly two-and-a-half years, during which time Husband had failed to appear at most hearings, including those that had been rescheduled at his request. Furthermore, Husband gave no indication that he would attend the property division hearing, even if given more time. Rather, he stated that "[because of] health concerns . . . dire finances, and a real fear that I will merely be

incarcerated and die in jail[], I will not make the 900 mile trip [to the hearing] next Tuesday." Under these circumstances, we cannot conclude that the trial court exceeded its discretion by denying Husband's motion for a continuance. *Cf. Rohan v. Boseman*, 2002 UT App 109, ¶¶ 24-26, 46 P.3d 753 (affirming the trial court's refusal to grant a continuance to a disabled party because the denial was based on the party's failure to prosecute the case, and not because of his disability).

C.  Husband's Claimed Right To Appear by Telephone Is Inadequately Briefed

¶40    Husband also challenges the trial court's refusal to allow him to appear by telephone. Our review of this issue is complicated by the fact that the trial court denied Husband's request without indicating any reasons for its decision.[10] However, because a reviewing court is "not simply a depository in which the appealing party may dump the burden of argument and research[,] . . . we may refuse, sua sponte, to consider inadequately briefed issues." *Hampton v. Professional Title Servs.*, 2010 UT App 294, ¶ 2, 242 P.3d 796 (citation and internal quotation marks omitted); *see also* Utah R. App. P. 24(a)(9) (requiring that the argument contain "citations to the authorities, statutes, and parts of the record relied on"). Husband cites no authority for his argument that he was entitled to appear by telephone[11] and makes little attempt to support his asserted need to do so.[12] Accordingly, Husband has not adequately briefed this claim and we do not address it further.

---

[10]The record reflects only that the trial court instructed the court clerk to "disabuse[]" Husband of the notion that he could appear by telephone.

[11]Husband cites only the court's notice that "[i]ndividuals needing special accommodations . . . should call [the court] three days prior to the hearing" to support the proposition that the court erred by not allowing him to appear telephonically.

[12]Husband's motion to the trial court focuses on his fear that he could "be placed in jail for an unknown amount of time," and makes only vague references to his medical condition.

### III. The Findings Do Not Support the Property Division or the Attorney Fee Award

¶41    Next, Wife asks us not to consider Husband's challenges to the property division and award of attorney fees because he did not preserve those claims. In addressing this argument, it is important to distinguish between a challenge to the adequacy or completeness of the trial court's findings and a claim that the evidence is not sufficient to support those findings. Generally, an appellant must preserve a challenge to the adequacy of the trial court's findings because if called to its attention, the trial court can correct the problem by making additional findings. *See In re K.F.*, 2009 UT 4, ¶¶ 60-62, 201 P.3d 985 (explaining that it is "wholly necessary for a party to challenge and thus afford the trial court 'an opportunity to correct the alleged error'"(quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801)). But an appellant is not required to "challenge the evidentiary support for [the] court's findings shortly after the court articulate[d] them." *Id.*

¶42    Although we generally will not review an unpreserved challenge to the adequacy of the trial court's findings, "where the inadequacy of the trial court's findings of fact and conclusions of law results in our inability to ascertain the basis of the trial court's decision, [we are] prevented from effectively reviewing the trial court's decision and may remand for the entry of more-detailed findings." *See Interstate Income Props., Inc. v. La Jolla Loans, Inc.*, 2011 UT App 188, ¶ 12, 257 P.3d 1073; *see also Leppert v. Leppert*, 2009 UT App 10, ¶ 24, 200 P.3d 223 (reversing and remanding "for determination of further details" where the appellate court could not determine how the trial court arrived at its conclusions); *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 24, 176 P.3d 476 ("[W]ithout findings from which we can ascertain how the trial court categorized and valued the property, we cannot assess the merits of the challenges to its distribution."). Husband has not directed us to any place in the record where he notified the trial court of the alleged inadequacies in the detail of the findings. Accordingly, he has not preserved this issue. *See Bonneville Billing & Collections v. DesignScape, LLC*, 2011 UT App 305, ¶ 3, 263 P.3d 509 (mem.). Nonetheless, from the existing findings and conclusions, we are unable to ascertain the basis for the trial court's award of nearly all of the marital assets to Wife. We are also unable to determine how the trial court arrived at its award of attorney fees. Thus, we must remand for the entry of more detailed findings.

¶43     To the extent that Husband challenges the sufficiency of the evidence to support the findings that the trial court did make, Wife contends that he did not marshal the evidence supporting those findings. However, Husband replies that there is no evidence to marshal with respect to a number of the trial court's findings. In *Wilson Supply, Inc. v. Fraden Manufacturing Corp.*, 2002 UT 94, 54 P.3d 1177, the Utah Supreme Court explained that where an appellant asserts that the record does not contain any evidence to marshal in support of a particular finding of fact, the appellee "need only point to a scintilla of credible evidence from the record that supports the finding of fact in order to overcome the appellant's 'no evidence' assertion and to demonstrate that the appellant has failed to meet its marshaling burden." *Id.* ¶ 22. While this may be an easy task in most cases, it is more difficult here because the trial court heard almost no evidence.

A.  The Trial Court Must Apply Equitable Principles in Dividing Marital Property

¶44     The trial court awarded Wife nearly all of the parties' property, leaving Husband with only his clothing, personal items, and dogs. Husband argues that the trial court erred in failing to divide the marital property equitably. In support of this claim, Husband relies on the trial court's failure to categorize the parties' property as marital or separate, its award of more property to Wife than she claimed in her complaint, and the court's deviation from longstanding principles of marital property distribution.

¶45     We will not disturb a trial court's distribution of marital property "unless it is clearly unjust or a clear abuse of discretion." *See Gardner v. Gardner*, 748 P.2d 1076, 1078 (Utah 1988). However, a trial court's "property 'distribution must be based upon adequate factual findings and must be in accordance with the standards set by this state's appellate courts.'" *Hodge v. Hodge*, 2007 UT App 394, ¶ 3, 174 P.3d 1137 (mem.) (quoting *Dunn v. Dunn*, 802 P.2d 1314, 1317 (Utah Ct. App. 1990)); *see also Kelley v. Kelley*, 2000 UT App 236, ¶ 24, 9 P.3d 171 (noting that trial courts must follow a "systematic approach" to property division). This is true even when a court has entered a default due to one party's failure to comply with discovery. *Cf. Marshall v. Marshall*, 915 P.2d 508, 516 (Utah Ct. App. 1996) (reversing and remanding an alimony award "for additional findings" and "a reassessment . . . if necessary").

¶46     When dividing property in a divorce, "'the court should first properly categorize the parties' property as part of the marital estate or as the separate property of one or

the other.'" *Hodge*, 2007 UT App 394, ¶ 5 (quoting *Burt v. Burt*, 799 P.2d 1166, 1172 (Utah Ct. App. 1990)). Then, the court should presume that each party is entitled to all of that party's separate property and one-half of the marital property, regardless of which spouse's name appears on the title to the marital property. *See Stonehocker*, 2008 UT App 11, ¶ 15; *see also Bradford v. Bradford*, 1999 UT App 373, ¶ 26, 993 P.2d 887 (stating that equitable principles apply to marital property, even when titled in only one spouse's name). The court may deviate from the presumption of equal distribution of marital property if it finds "exceptional circumstances" warranting such a departure. *See Stonehocker*, 2008 UT App 11, ¶ 15; *see also Hodge*, 2007 UT App 394, ¶ 5. However, an unequal distribution of property is justified only when the trial court memorializes "commendably detailed findings" of the exceptional circumstances that support the distribution. *See Bradford*, 1999 UT App 373, ¶¶ 26-27 (internal quotation marks omitted).

¶47    There is nothing in the record here to indicate that the trial court went through any of the required steps before awarding virtually all of the property to Wife. Neither the default, nor the supplemental divorce decree reflect that the trial court classified the property as marital or separate, acknowledged the presumption that each party is entitled to one-half of the marital property, or outlined exceptional circumstances, based on the record evidence, to justify the unequal distribution of marital property.

¶48    When dividing retirement accounts accrued or contributed to during marriage, "'the marital property subject to distribution is a portion of the retirement benefits represented by the number of years of the marriage divided by the [Wife's] employment.'" *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 26, 147 P.3d 464 (quoting *Woodward v. Woodward*, 656 P.2d 431, 433-34 (Utah 1982)). The trial court did not make any findings identifying the portion of Wife's retirement account that is marital property and thus subject to equitable distribution, or indicate any reason for deviating from this formula.[13]

---

[13]Husband asserts that the trial court violated rule 54(c) of the Utah Rules of Civil procedure by awarding Wife more than she claimed in her complaint. *See* Utah R. Civ. P. 54(c)(2) ("A judgment by default shall not be different in kind from, or exceed in amount, that specifically prayed for in the demand for judgment."). Courts are not entitled "to deviate from [the rules of civil procedure] just because one party is in

(continued...)

¶49    Because the trial court's findings do not identify the marital property or indicate why Husband was not entitled to half of it after a twenty-one-year marriage, we reverse the property division order and remand to the trial court to conduct the proceedings necessary to allocate the marital assets and debt according to governing Utah law.

B.  The Findings Do Not Support the Attorney Fee Award

¶50    Husband next challenges the trial court's award of $38,771.50 in costs and attorney fees to Wife.  We agree with Husband that the basis for the trial court's attorney fee award is not apparent.  Consequently, we consider each of the possibilities the parties advance.

      1.      Attorney Fees to Enable A Party to Prosecute or Defend the Action

¶51    We first consider the trial court's authority under section 30-3-3(1) to "order a party to pay the costs, attorney fees, and witness fees, including expert witness fees, of the other party to enable the other party to prosecute or defend the action."[14]  *See* Utah Code Ann. § 30-3-3(1) (Supp. 2011).  An award of such fees "must be based on the usual factors of need, ability to pay, and reasonableness."  *See Connell v. Connell*, 2010 UT App 139, ¶ 28, 233 P.3d 836 (citing *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476); *see also* Utah Code Ann. § 30-3-3(1); *Anderson v. Thompson*, 2008 UT App 3, ¶ 40, 176 P.3d 464.  The trial court's findings include two of the three factors required: "[Wife] is in need of assistance in paying such fees and costs and [Husband] has the ability to pay the same."  The trial court also made a relevant subsidiary finding that

--------

[13](...continued)
default and is not entitled to be heard on the merits of the case."  *Russell v. Martell*, 681 P.2d 1193, 1195 (Utah 1984).  However, because we reverse and remand on other grounds, we need not determine whether such a deviation was made in this case.

[14]The trial court's findings indicate that the fees may have also been awarded to reimburse Wife for enforcing the court order reinstating her retirement payments from the CalPERS account.  *See* Utah Code Ann. § 30-3-3(2) (Supp. 2011) (allowing attorney fees to be awarded for the cost of enforcing a court order of property division).  However, because neither party argues that this was the basis for the fees, we do not address it.

"[e]ach of the parties is an employable self-supporting person." According to Husband, these findings are not supported by even a scintilla of evidence. We agree.

¶52 Although Wife had a witness prepared to testify as to Husband's ability to work, the trial court decided that the testimony was unnecessary. Instead, the trial court relied on Wife's testimony that Husband occasionally hunted big game during the marriage. While that information may have been some evidence of Husband's physical condition on those occasions, it says nothing about Husband's ability to support himself. Nor does it provide any support for a finding that Husband has the ability to pay Wife's attorney fees. Indeed, we could find nothing in the record indicating what Husband's actual mental or physical disabilities are, or to what extent he is incapacitated by those disabilities. There is nothing about the fact that Husband sometimes traveled to hunt during the course of the twenty-one-year marriage from which the trial court could extrapolate that Husband could find a job at a salary that would exceed the amount of the resulting decrease in his disability payments, pay his own basic living expenses, and have sufficient remaining assets to pay Wife's attorney fees. *See, e.g., Leppert v. Leppert*, 2009 UT App 10, ¶ 26, 200 P.3d 223 (reversing an attorney fee award where, although the trial court considered the parties' annual income and monthly living expenses, it did not make detailed findings on the husband's ability to pay or the wife's need); *Jensen v. Jensen*, 2009 UT App 1, ¶ 18, 203 P.3d 1020 (holding that findings were insufficient where the evidence showed only that the husband made more money than the wife, but not that the husband had the ability to pay or that the fees were reasonable).[15] Nor could a finding that Husband had the ability to pay be supported by the trial court's property award, because it awarded practically everything to Wife. *Cf. Wight v. Wight*, 2011 UT App 424 , ¶ 34, 268 P.3d 861 (affirming an award of attorney fees to the wife where the husband's ability to pay was based on "the offsets and home equity he [was] receiving"); *Young v. Young*, 2009 UT App 3, ¶¶ 23-24, 201 P.3d 301 (same based on the husband's proceeds from the sale of the marital home).

---

[15]The record indicates that Husband has disability income of between $1,000 and $1,400 each month, while Wife earns about $1,600 each month. However, Wife also receives retirement payments from the CalPERS account, which Husband contends increase her monthly income to a total of $4,348 per month. Neither party has provided evidence of the actual value of the retirement account.

¶53    Likewise, there is no evidence to support the trial court's finding that Wife needed assistance in paying her attorney fees. "[C]ourts should evaluate the requesting spouse's personal ability to pay based on his or her income, assets, and expenses, taking into account money expected to be earned or distributed in light of the divorce decree." *Kimball v. Kimball*, 2009 UT App 233, ¶ 47, 217 P.3d 733. While Wife testified to the amount she earned and that she paid bills and the mortgage on the marital home, there was no attempt to quantify her assets or liabilities. *Cf. Soderborg v. Soderborg*, 2009 UT App 359U, para. 7 (mem.) (relying on "facts concerning the parties' monthly incomes and expenses" to affirm the trial court's decision to deny attorney fees). Nor is there any indication how the trial court accounted for the amounts Wife had already taken from a marital account to pay her attorney fees.

¶54    "'In deciding a case tried without the aid of a jury, the court has great leeway in deciding what are the facts as presented by the evidence before him. However, neither a judge nor a jury is permitted to go outside the evidence to make a finding.'" *Iacono v. Hicken*, 2011 UT App 377, ¶ 20, 265 P.3d 116 (quoting *Salt Lake City v. United Park City Mines Co.*, 28 Utah 2d 409, 503 P.2d 850, 852 (1972)). Because the trial court's findings are not supported by record evidence, the award of attorney fees cannot be affirmed under Utah Code section 30-3-3(1).

      2.      Attorney Fees Awarded as a Sanction

¶55    Husband also argues that the fees were not properly awarded as a sanction. A trial court may impose costs and attorney fees as a sanction. *See Miles v. Miles*, 2011 UT App 359, ¶ 16, 269 P.3d 958. When a trial court uses attorney fees as a sanction in a divorce action, however, it "must follow the appropriate procedures and make findings adequate to support the fee award." *See Arnold v. Arnold*, 2008 UT App 17, ¶ 12 n.3, 177 P.3d 89. Because the trial court did not identify any specific rule, we assume for purposes of our analysis that it invoked its inherent power to impose costs and fees as a sanction. *See generally Cadlerock Joint Venture II, LP v. Envelope Packaging of Utah, Inc.*, 2011 UT App 98, ¶ 17, 251 P.3d 837 (acknowledging that a trial court's power to impose monetary sanctions is granted by Utah Code section 78A-2-201 (citing Utah Code Ann. § 78A-2-201 (2008)); *see also Miles*, 2011 UT App 359, ¶ 16 (upholding a trial court's inherent power to impose fees where a party failed to appear at a scheduled hearing); *Griffith v. Griffith*, 1999 UT 78, ¶ 12, 985 P.2d 255 (upholding a trial court's "inherent powers to impose monetary sanctions on an attorney for wasting judicial resources").

¶56   The trial court's findings set forth numerous instances of Husband's failure to participate in the Utah action while actively pursuing claims in California, which findings adequately support its decision to sanction Husband. However, a sanction must also be reasonable. "Ordinarily attorney fees are awarded only if authorized by a statutory or contractual provision. However, a court has inherent equitable power to award reasonable attorney fees when it deems [it] appropriate in the interest of justice and equity." *Dahl v. Harrison*, 2011 UT App 389, ¶ 43, 265 P.3d 139 (alteration in original) (citation and internal quotation marks omitted). Husband contends that the trial court had no information before it to assess the reasonableness of Wife's fees.

¶57   Husband first contends that the finding that Wife incurred $20,000 in attorney fees defending Husband's California actions is not sufficient to support a sanction of $38,771.50. While we acknowledge that the record indicates that the California courts awarded Wife some of those costs and fees, it is not apparent that the trial court included any of Wife's California fees in the Utah attorney fee award. The basis for the trial court's award seems to be Wife's counsel's unsworn statement quantifying the total fees. However, without an affidavit, it is impossible to ascertain whether that amount includes the fees incurred in the California litigation, or whether they were discounted to account for fees already imposed in California. Additionally, the complete lack of evidence on this point frustrates our attempt to review how the money Wife took from the couple's joint bank account to pay attorney fees has been accounted for by Wife.[16] *See Busche v. Busche*, 2012 UT App 16, ¶ 30, 272 P.3d 748 (acknowledging that the trial court "properly understood that it could not consider Husband's counsel's unsworn statement . . . as evidence that Wife's fees were unreasonable," and anticipating "that on remand [the trial court would] also base its reasonableness finding solely upon the competent and admissible evidence presented to it"). Accordingly, we agree with Husband that the evidence is insufficient to establish that the attorney fee award was a reasonable sanction, especially against the backdrop of the court having already sanctioned Husband by striking his pleadings and entering his default.

¶58   Although a cost and attorney fee award may be appropriate here, without detailed findings as to the basis for those fees, we are unable to affirm the award.

---

[16]The account was apparently valued between $18,000 and $20,400 when the couple separated. However, the amount Wife used for court costs and attorney fees is not stated in the record.

Accordingly, we remand this issue to the trial court so that it can identify the basis of the attorney fee award and enter findings based on the record evidence.

CONCLUSION

¶59    The trial court did not exceed its discretion in entering Husband's default.  We further conclude that Husband had actual notice of the property division hearing. However, the trial court did not make adequate findings based on record evidence to support its property division or the attorney fee award.

¶60    Affirmed in part, and reversed and remanded in part.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶61    WE CONCUR:

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
James Z. Davis, Judge