2013 UT App 120

## THE UTAH COURT OF APPEALS

YUANZONG FU,
Plaintiff and Appellee,
*v.*
CLYDE RHODES, JOSEPH NASO, AND RENE NASO EVANS,
Defendants and Appellants.

Opinion
No. 20110081-CA
Filed May 16, 2013

Third District, Salt Lake Department
The Honorable Paul G. Maughan
No. 080916174

Randy B. Birch, Attorney for Appellants
David J. Hodgson, Attorney for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGE
STEPHEN L. ROTH concurred. JUDGE CAROLYN B. MCHUGH
concurred in part and dissented in part, with opinion.

DAVIS, Judge:

¶1     Clyde Rhodes, Joseph Naso, and Rene Naso Evans
(collectively, Defendants) appeal from an Order and Judgment,
claiming that the trial court abused its discretion by striking their
Answer and entering judgment against them as a discovery
sanction pursuant to rule 37 of the Utah Rules of Civil Procedure.
*See* Utah R. Civ. P. 37(e)(2). In the alternative, Defendants contend
that even if the sanction was otherwise appropriate, the trial court
erred by entering judgment because Yuanzong Fu's Complaint fails
to set forth factual allegations supporting the relief requested. We
affirm but remand for a calculation of fees on appeal.

BACKGROUND

¶2   On August 7, 2008, Fu filed his Complaint against Defendants[1] for breach of contract, fraud, negligent misrepresentation, foreclosure, and fraudulent transfer. The claims arise out of four real estate investments Fu made (the Investments) between February and July of 2007. The Investments were each evidenced by a promissory note and were to be repaid in monthly installments and secured by trust deeds against certain real property. The Complaint alleges that the trust deeds were never recorded against the property and that Fu had been repaid only a small fraction of the funds advanced.

¶3   Defendants filed their Answer on September 11, 2008. The Answer includes an affirmative defense that "[Fu] has failed to state a cause of action against . . . Defendants upon which relief can be granted." On January 12, 2009, the trial court entered a stipulated discovery plan and order, providing that all fact discovery would be completed no later than April 23, 2009. Subsequently, Fu served his first set of interrogatories, requests for the production of documents, and requests for admissions on Defendants. Because Defendants failed to respond to any of the discovery requests, Fu filed a motion to compel.

¶4   On May 12, 2009, the trial court granted Fu's motion and warned that "[i]f . . . Defendants . . . fail[ed] to provide all requested discovery within ten days . . . , Defendants' Answer [would] be stricken and [Fu would] be entitled to judgment as prayed for in the Complaint." Defendants responded to Fu's interrogatories within ten days but failed to respond completely to the remaining discovery requests. Rather than seek immediate redress from the trial court, however, Fu apparently reached a

---

1. The Complaint also included S. Parker Smith as a named defendant. During litigation, however, Smith filed a Notice of Bankruptcy Filing and Stay. As a result, default judgment was not entered against Smith and he is not a party on appeal.

compromise with Defendants, which is reflected in a stipulated amended case management order filed on March 15, 2010. The order provides that "[f]act discovery, including responses to written discovery and depositions, [was to] be completed no later than May 31, 2010." (Emphasis omitted.) Despite that new order, the parties' discovery disputes continued.

¶5     On June 2, 2010, Fu filed a motion for entry of judgment pursuant to rule 37, alleging that Defendants had "engaged in a deliberate pattern of promising [documents] and then" failing to provide them in an attempt to hinder Fu in taking depositions and prosecuting his case. *See generally* Utah R. Civ. P. 37(e)(2)(D) ("[T]he court in which the action is pending may impose appropriate sanctions for the failure to follow its orders, including . . . dismiss all or part of the action, strike all or part of the pleadings, or render judgment by default on all or part of the action."). Fu also argued that Defendants failed to provide a full set of bank statements, books and records, tax returns, and proof of alleged payments on the Investments. Defendants disputed these assertions and claimed that they had produced all bank statements, did not understand what the requests for books and records entailed, and did not have any documents evidencing payments to Fu or tax returns for the years requested.

¶6     At an August 14, 2010 hearing on the motion for entry of judgment, Defendants claimed to have provided all requested documents within their control, but Fu argued to the contrary. The trial court asked Fu to submit a discovery violations timeline, which he filed on September 2, 2010. On September 20, the trial court granted Fu's motion for entry of judgment. Although the court acknowledged that "in most cases, lesser sanctions are usually sufficient and more appropriate in moving a case along," it found the more severe sanction of default judgment to be appropriate in this case, stating, "[B]ased upon the [D]efendants' continued failures to comply with timely discovery, their failure to comply with the Court's previously entered Order to Compel, and their failure to comply with the Case Management Orders, . . .

[Fu's] Motion is based on good cause and should be granted." The trial court instructed Fu to prepare an order memorializing its decision.

¶7     Defendants filed an objection to the proposed order and a motion to alter and amend the order, which the trial court set for hearing on December 20, 2010. Defendants challenged the proposed sanction as excessive and again claimed that they had fully complied with Fu's discovery requests. After hearing from the parties, the trial court noted, "The argument today is remarkably similar to what we heard at our last hearing. And the Court's unpersuaded that there's anything new or different at this point, and so, . . . I'm going to enter the order as proposed by [Fu] at this time." The trial court entered judgment "against [Defendants], jointly and severally, for breach of contract, common law fraud, and negligent misrepresentation and on the [Investments]" in the sum of $235,440, which includes interest, court costs, and attorney fees, and "for fraudulent transfer and foreclosure" relating to nine separate properties. Defendants appeal.

ISSUES AND STANDARDS OF REVIEW

¶8     Defendants argue that the rule 37 sanctions the trial court imposed in this case—striking their Answer and entering default judgment—were unduly severe and therefore constituted an abuse of the trial court's discretion. *See generally* Utah R. Civ. P. 37(e)(2). "As a general rule, district courts are granted a great deal of deference in selecting discovery sanctions, and we overturn a sanction only in cases evidencing a clear abuse of discretion." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957.

¶9     Defendants also contend that even if it was otherwise appropriate for the trial court to strike their Answer, the trial court erred when it entered default judgment because the facts alleged in the Complaint do not support recovery under the stated legal theories. Defendants concede that this issue was not preserved but

assert that supreme court precedent belies the necessity of preserving this type of claim for appeal. *See infra* ¶ 14. We generally do not consider claims raised for the first time on appeal unless they fall under a recognized exception to the preservation rule. *See Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 880 (Utah 1996).

## ANALYSIS

### I. Severity of Sanctions

¶10    In reviewing a challenge to rule 37 sanctions, we first "consider whether the district court was justified in ordering sanctions" and "then review the type and amount of sanctions for abuse of discretion." *PC Crane Serv., LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 32, 273 P.3d 396. Here, Defendants do not argue that a sanction was unjustified. Instead, they contend that the trial court abused its discretion by "imposing . . . the most severe sanction available under Rule 37." "Even though dismissing an action is 'one of the most severe of the potential sanctions that can be imposed, it is clear from the language of rule 37 that it is within a trial court's discretion to impose such a sanction.'" *Allen v. Ciokewicz*, 2012 UT App 162, ¶ 32, 280 P.3d 425 (quoting *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997)); *see also* Utah R. Civ. P. 37(e)(2). Accordingly, Defendants undertake a significant burden in attempting to show that the trial court abused its discretion in striking their Answer and entering default judgment. To meet that burden, Defendants "must show either that the sanction is based on an erroneous conclusion of law or that the sanction lacks an evidentiary basis." *SFR, Inc. v. Comtrol, Inc.*, 2008 UT App 31, ¶ 14, 177 P.3d 629 (citation and internal quotation marks omitted). Defendants have failed to identify any error of law, and the record supports the trial court's decision.

¶11    The trial court expressly warned Defendants in May 2009 that they were at risk of having judgment entered against them,

informing them that if they "fail[ed] to provide all requested discovery within ten days . . . [their] Answer [would] be stricken and [Fu would] be entitled to judgment as prayed for in the Complaint." Not only did they fail to meet this deadline, but they failed to provide the requested discovery even by the extended May 31, 2010 deadline stipulated to in the amended case management order. By the time the trial court entered judgment against Defendants on September 20, 2010, nearly sixteen months had passed since the trial court's initial deadline and the discovery requests were still outstanding. The trial court afforded Defendants two opportunities to be heard before striking their Answer and entering default. Ultimately, while acknowledging the severity of the sanctions imposed, the court found that Fu's motion for entry of judgment was "based on good cause and should be granted" due to "[D]efendants' continued failures to comply with timely discovery, their failure to comply with the Court's previously entered Order to Compel, and their failure to comply with the Case Management Orders." Under these circumstances, we are not convinced that it was an abuse of the trial court's discretion to strike the Answer and enter default judgment. *See Morton*, 938 P.2d at 275–76 (affirming dismissal as a discovery sanction where the plaintiff "had plenty of warning that his case was in trouble, considering he admitted to having received the motion to compel which specifically requested a court order . . . threatening dismissal" but "did nothing to show the court that he was interested in diligently prosecuting his case"); *Hales v. Oldroyd*, 2000 UT App 75, ¶¶ 26, 28, 999 P.2d 588 (affirming the dismissal of a complaint as a discovery sanction where the plaintiff "continually delayed in responding to discovery requests"); *Tuck v. Godfrey*, 1999 UT App 127, ¶¶ 24–25, 981 P.2d 407 (affirming entry of default judgment as a discovery sanction where the defendant "had 'done virtually nothing'" to advance discovery).

## II. Sufficiency of the Complaint

¶12    Next, Defendants argue that even if striking their Answer was appropriate, the facts alleged in the Complaint do not support recovery under the legal theories pleaded and, therefore, the trial court erred in entering judgment against Naso and Evans on all claims, and against Rhodes on the claims based on the July 23, 2007 investment. As discussed, rule 37 provides that "the court in which the action is pending may impose appropriate sanctions for the failure to follow its orders, including . . . render *judgment by default* on all or part of the action." *See* Utah R. Civ. P. 37(e)(2)(D) (emphasis added); *see also Knouff v. United States*, 74 F.R.D. 555, 557 (W.D. Pa. 1977) (mem.) (determining that a motion to strike an answer is, "in effect if not form, an application for entry of judgment by default"). Nevertheless, as Defendants point out, that power is tempered by the requirement that the entry of judgment be supported by the well-pleaded allegations of the complaint. As the Utah Supreme Court has explained,

> [A d]efendant's failure to answer and ensuing default . . . require the court to accept the factual allegations as true, but the court [should] enter judgment as requested *only if it determined those facts established an actionable claim.* Were the rule otherwise, a court could be obligated to enter a money judgment on a complaint as frivolous as a refusal to share recipes with a neighbor. Thus, the court must determine whether an actionable claim exists.

*American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1194 (Utah 1996) (omission and second alteration in original) (citation and internal quotation marks omitted) (holding that the trial court properly denied a motion to enter judgment against a party who failed to answer because the trial court's previous summary judgment in favor of other defendants established that the plaintiff's claims failed as a matter of law), *abrogated on other*

*grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234.

¶13    Accordingly, "[a] trial court asked to render a judgment by default must first conclude that the uncontroverted allegations of an applicant's petition are, on their face, legally sufficient to establish a valid claim against the defaulting party." *Stevens v. Collard*, 837 P.2d 593, 595 (Utah Ct. App. 1992); *see also id.* at 598 (upholding the trial court's refusal to modify custody despite the father's failure to respond because the mother's sparse allegations were legally insufficient to reopen the custody decree). Defendants contend that the same requirements must be met before judgment can be entered as a discovery sanction. *See, e.g., Microsoft Corp. v. Computer Care Ctr., Inc.*, 2008 WL 4179653, at *6 (E.D.N.Y. Sept. 10, 2008) (stating that "regardless of whether default is entered as a discovery sanction or for failure to defend," the factual allegations of the complaint must constitute a legitimate cause of action); *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.*, 646 N.W.2d 19, 30 (Wis. 2002) ("A successful motion to strike an answer will normally lead to a default judgment. Therefore, a motion to strike an answer to facilitate a default judgment should satisfy the same criteria as the motion for default judgment.").

¶14    However, Fu argues that we should not evaluate the sufficiency of the Complaint on appeal because Defendants did not raise this issue in the trial court. The defense of "failure to state a claim can[not] be raised for the first time on appeal." *Smith v. Vuicich*, 699 P.2d 763, 765 (Utah 1985) (per curiam) (discussing the issue in the context of an appeal after a jury trial); *see also* Restatement (Second) of Judgments § 78 (1982) ("Relief from a judgment must be obtained by means of a motion for that purpose in the court that rendered the judgment unless relief may be obtained more fully, conveniently, or appropriately by some other procedure."). Nevertheless, Defendants insist that when a trial court strikes a party's pleading and enters a default judgment, the party may challenge the sufficiency of the complaint to support the

judgment for the first time on appeal. Defendants' position is not supported by our jurisprudence.

¶15    In *State v. Sixteen Thousand Dollars United States Currency*, 914 P.2d 1176 (Utah Ct. App. 1996), we rejected the idea that a defendant could appeal directly from a default judgment without first raising grounds for setting aside the default with the trial court. *See id.* at 1178. We held that this rule extends even to alleged legal errors, such as the trial court's failure to determine the legal sufficiency of the pleadings, *see generally American Towers*, 930 P.2d at 1194 (explaining that a trial court should enter default judgment "only if it determined [that the factual allegations] established an actionable claim" (emphasis, citation, and internal quotation marks omitted)), or its having awarded damages in excess of the amount prayed for, *see generally Katz v. Pierce*, 732 P.2d 92, 95 (Utah 1986) (per curiam) ("A default judgment shall not be different in kind from, or exceed in amount, that specified in plaintiff's complaint." (citing Utah R. Civ. P. 54(c)(2))). *See Sixteen Thousand*, 914 P.2d at 1178. In order to preserve a challenge to a default judgment entered for failure to appear, the defendant must first seek relief in the trial court by making "a Rule 60(b) motion for relief from judgment, or a motion for a new trial, or to amend or alter the judgment, pursuant to Rule 59" of the Utah Rules of Civil Procedure. *Id. See generally* Utah R. Civ. P. 59; *id.* R. 60(b). Only then may the party "appeal from a denial of a Rule 60(b) motion or from the default judgment directly, following a denial of a Rule 59 or other post-judgment motion."[2] *Sixteen Thousand*, 914 P.2d at 1178. This rule is

---

2. We also suggested in *Sixteen Thousand* that a direct appeal from a default judgment entered as a rule 37 sanction might be permissible without an intervening motion to set aside because a rule 37 defendant, by virtue of having appeared before the trial court, would be able to preserve an argument regarding the sufficiency of the pleadings without filing a post-judgment motion. *See State v. Sixteen Thousand Dollars U.S. Currency*, 914 P.2d 1176,

(continued...)

consistent with the policy that "[a] trial court should be given an opportunity to correct errors of law, as well as to excuse a defaulting party when reasonable, so as to resolve any arising controversy before appeal." *Id.* at 1179.[3]

¶16     Despite our precedent directly addressing the preservation rule in the context of a default judgment, Defendants point us to the supreme court's statement in *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071 (Utah 1998), that "[o]n appeal from a default judgment, a defendant may contest 'the sufficiency of the complaint and its allegations to support the judgment.'" *Id.* at 1076 (quoting

---

2. (...continued)
1178 (Utah Ct. App. 1996). This is consistent with the primary holding of *Sixteen Thousand*—that the preservation rule applies to appeals from default judgments. *Id.* at 1178–79.

3. Unlike the dissent, we are not concerned that the holding of *Sixteen Thousand* contradicted dicta in *Katz v. Pierce*, 732 P.2d 92 (Utah 1986) (per curiam), suggesting that a party against whom a default judgment has been entered for failure to appear might have appealed directly from the judgment rather than the 60(b) motion to set aside. *See id.* at 95. First of all, this dicta consists of a single sentence without further explanation. *See id.* ("[N]o direct appeal from the judgment was taken, although appellants might have done so."). Furthermore, the *Katz* court's rejection of the damages argument was based on the fact that the argument had not been raised by the appellants in their rule 60(b) motion, and the court adamantly condemned the assertion of "new grounds . . . for the first time on appeal without having afforded the trial court an opportunity to rule on those grounds or to correct any alleged deficiency." *Id.* The *Katz* court's emphasis on the importance of preservation makes it unlikely that it intended by dicta to imply that preservation in the context of a direct appeal is unnecessary. In any event, unlike the explicit holding in *Sixteen Thousand*, the dicta in *Katz* is not controlling authority.

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Taken out of context, this statement appears to suggest an exception to the preservation rule. However, it is clear from the *Skanchy* court's accompanying discussion that it was considering not whether a claim that a complaint was insufficient to support a default judgment could be raised for the first time on appeal, but whether it could be raised *at all* in light of the fact that "well-pled facts alleged in the pleadings of the nondefaulting party are binding and can support the default judgment." *See id.*

¶17   The foundation for this discussion is apparent in *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200 (5th Cir. 1975), the case on which the *Skanchy* court relied in asserting that a defendant could challenge the sufficiency of the complaint on appeal. *See Skanchy*, 952 P.2d at 1076. The *Nishimatsu* court explained that a defendant is not, by operation of a default judgment, "held to admit facts that are not well-pleaded or to admit conclusions of law," that is, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover" and a defendant is therefore "entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Nishimatsu*, 515 F.2d at 1206 (emphasis omitted). The *Skanchy* court's discussion makes it apparent that it was this issue, not the preservation rule, that it had in mind when it quoted *Nishimatsu*: "Although factual allegations are deemed admitted, a plaintiff's legal allegations are not binding. Accordingly, a court may grant relief only if a valid legal basis supported by well-pled facts is asserted in the complaint." *Skanchy*, 952 P.2d at 1076 (citation omitted).[4]

---

4. In *Nishimatsu*, the defendant appealed directly from the default judgment without first filing a motion to set aside. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975). Thus, the *Nishimatsu* defendant's challenge to the sufficiency of the complaint appears not to have been preserved. However,

(continued...)

¶18 Indeed, the *Skanchy* opinion does not refer to the preservation rule at all and does not seem to view the challenge to the sufficiency of the complaint as being raised for the first time on appeal.[5] *Id.* at 1076–77. We are unwilling to take the *Skanchy* court's isolated statement that a defendant subject to a default judgment is entitled to contest the sufficiency of the complaint on appeal—made in the context of a discussion of whether legal allegations are binding, rather than in the context of a preservation discussion—as a definitive ruling carving out an exception to the preservation requirement, especially in light of our undisturbed precedent in *Sixteen Thousand* explicitly requiring preservation. *See Sixteen Thousand*, 914 P.2d at 1178–79.

¶19 Furthermore, even if a defense of failure to state a claim could be raised for the first time on appeal in the context of a

---

4. (...continued)
preservation is neither the crux of the *Nishimatsu* court's analysis nor the basis for the *Skanchy* court's reliance on that analysis.

5. It is ultimately unclear whether the *Skanchy* defendant's challenge to the sufficiency of the complaint was actually preserved. The court observed only that the defendant "moved to set aside the judgment" and that "[t]he district court denied the motion as to liability but granted it with respect to damages." *See Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1073–74 (Utah 1998). However, even assuming that the issue was not preserved, the *Skanchy* court's failure to explicitly address preservation, and the defendant's apparent failure to contest the appeal on preservation grounds, suggests to us that the *Skanchy* court's ruling was not intended to carve out an exception to the preservation rule. It seems more likely that the preservation issue was simply never adequately brought to the supreme court's attention and that the court consequently considered the defendant's argument as though it were preserved.

default judgment entered for failure to appear, it is not reasonable for such a rule to extend to an appeal of a default judgment entered pursuant to rule 37. Where a default judgment is entered as a discovery sanction—as opposed to being entered as a result of a defendant's failure to answer a complaint—"the sanctioned party [will have] filed responsive pleadings, . . . appeared before the trial court, and had an opportunity to argue against the sanction before the trial court." *Id.* (distinguishing a default judgment entered as a discovery sanction pursuant to rule 37 from a default judgment entered for failure to appear in explaining why a direct appeal from a rule 37 default judgment might be permissible). Thus, a defendant who has a default judgment entered against him as a discovery sanction will have had every opportunity to raise a defense for failure to state a claim before the trial court. Accordingly, any rationale that might exist for permitting a defendant to bypass the trial court and raise such a challenge for the first time on appeal in the context of a default judgment entered for failure to appear does not support such a rule with respect to a default judgment entered as a discovery sanction. Indeed, the parties in this case had been actively involved in litigation for more than two years. Before entering default judgment, the trial court held two separate hearings, yet Defendants never argued to the trial court that the Complaint failed to state a claim upon which a default judgment could be based. Because trial courts should generally be afforded "an opportunity to correct error and to end controversies before an appeal becomes necessary,"[6] *id.* at 1179, we decline to take upon ourselves the burden of weighing the sufficiency of the pleadings on appeal without the benefit of the trial court's analysis where Defendants had every opportunity to raise the issue in the trial court.

---

6. The importance of this policy to the proper functioning and respective responsibilities of our courts is underscored by the extent of the analysis in which the dissent was required to engage in order to determine, in the first instance, whether Fu's Complaint stated a claim. *See infra* ¶¶ 31–54.

### III. Attorney Fees on Appeal

¶20    Because we affirm the default judgment against Defendants, and because the promissory notes for the Investments contain provisions for payment of attorney fees if an action is brought to enforce them, Defendants are liable to Fu for attorney fees and costs reasonably incurred on appeal. *See Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980) ("[A] provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract . . . ."). We remand for the trial court to determine the amount of those fees and costs incurred on appeal.

### CONCLUSION

¶21    The trial court did not abuse its discretion by striking Defendants' Answer and entering default judgment against Defendants as a discovery sanction. Furthermore, because Defendants have failed to preserve their claim that the facts alleged in the Complaint do not support recovery under the stated legal theories, we do not address that issue on appeal. Accordingly, we affirm the trial court's Order and Judgment. We also award Fu attorney fees and costs reasonably incurred on appeal, to be calculated by the trial court on remand.

———

McHUGH, Judge (concurring in part and dissenting in part):

¶22    I concur with part I of the majority's decision, but I respectfully dissent from part II regarding whether a party may challenge the sufficiency of the complaint to support a default judgment for the first time on appeal. Accordingly, I would consider whether Fu's Complaint states a claim upon which relief

can be granted against each of the Defendants. Upon review of the Complaint, I would conclude that it does so as to Rhodes but fails to state a claim against Naso and Evans. As a result, I would affirm the default judgment against Rhodes but reverse as to Naso and Evans.

## I. Preservation

¶23    The Utah appellate courts have not addressed the precise issue before us: whether a party who has appeared and participated in litigation is required to raise a challenge to the sufficiency of the complaint in the trial court to preserve that issue for appeal of a default judgment entered as a result of a discovery sanction striking the answer. However, our appellate courts have provided some guidance on this issue in the context of a default judgment entered as a result of a failure to appear. Although much of that discussion is dicta, I believe it provides assistance in highlighting the competing rationales on this issue.

¶24    In the first of these decisions, *Katz v. Pierce*, 732 P.2d 92 (Utah 1986) (per curiam), the trial court entered default judgment against defendants who failed to file a timely answer. *Id.* at 93. Subsequently, the court denied the defendants' rule 60(b) motion to set aside the default judgment. *Id.*; *see also* Utah R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding . . . ."). The defaulted party appealed the trial court's denial of the rule 60(b) motion, seeking "reversal of the judgment because the damages awarded [were] in excess of the amount prayed for in the complaint" but did not separately appeal the default judgment. *Id.* at 95. The Utah Supreme Court first noted that it had "consistently reversed default judgments when the amount of damages awarded exceeds the amount of the prayer of the complaint or is unsupported by evidence in the record." *Id.* Nevertheless, it refused to do so in *Katz* because the "[a]ppeal was taken only from the denial of the 60(b)

motion, which was premised only upon the claim that the parties were [involved in settlement] negotiati[ons]." *Id*. The supreme court held that the defendants could not "assert new grounds for [their] motion [for relief from judgment] for the first time on appeal without having afforded the trial court an opportunity to rule on those grounds or to correct any alleged deficiency." *Id*. at 95–96. The court further observed that "[e]ven though the court erroneously gave no hearing on damages, that issue is relevant only in the context of a direct appeal from the judgment itself and not in an appeal from the motion to set aside when not raised below as grounds for the motion." *Id*. at 95. Because "no direct appeal from the judgment was taken, although appellants might have done so," the supreme court refused to consider the challenge to the amount of damages. *Id*. The dicta in *Katz* suggests that, at least with respect to a default entered for failure to appear, a party may challenge the amount of damages for the first time on appeal of the default judgment itself.

¶25    Ten years later, in *State v. Sixteen Thousand Dollars United States Currency*, 914 P.2d 1176 (Utah Ct. App. 1996), this court considered a related issue. There, the Grand County attorney filed a complaint seeking forfeiture of $16,000 seized during a traffic stop. *Id*. at 1177. The driver of the vehicle failed to answer, and the trial court entered a default judgment in favor of the State. *Id*. The driver then filed a motion for relief from judgment under rule 60(b), but before the trial court had an opportunity to rule, he filed a notice of appeal. *Id*.; *see also* Utah R. Civ. P. 60(b). The trial court later denied the 60(b) motion, but the driver did not appeal from that order. *See Sixteen Thousand*, 914 P.2d at 1177. Instead, he pursued only his direct appeal of the default judgment, arguing "that the trial court erred as a matter of law in finding the $16,000 subject to forfeiture, erred in making inadequate findings of fact, and exceeded the scope of permitted discretion in refusing to grant a continuance." *Id*. at 1177–78. This court dismissed the appeal, holding that the driver "could only appeal from the denial of his Rule 60(b) motion, and not from the default judgment directly." *Id.*

at 1178. We reasoned that when default is entered for the failure to defend, the party must "first present alleged errors regarding a default judgment to the trial court, and then follow the appropriate course for appeal." *Id.* at 1179. The *Sixteen Thousand* court did not discuss the suggestion in *Katz* that an unpreserved challenge to the amount of damages can be raised for the first time in a direct appeal from the default judgment. *See Katz*, 732 P.2d at 95. As the majority correctly notes, we instead distinguished a default judgment entered for failure to defend from a default judgment entered as a discovery sanction, stating that the "sanctioned party [would have] filed responsive pleadings, . . . appeared before the trial court, and had an opportunity to argue against the sanction before the trial court," while the party who fails to appear would not have. *Sixteen Thousand*, 914 P.2d at 1178. Thus, we suggested that a direct appeal from a default judgment entered as a sanction would be appropriate, but that when default judgment is entered for failure to appear, the proper course is to file a motion under rule 60(b) for relief from judgment, or under rule 59 to alter or amend judgment.[7] *Id.* We indicated that this approach "is a natural corollary of the general rule that we will not consider issues raised for the first time on appeal." *Id.* at 1178–79 (noting "the requirement that an appellant first present alleged errors regarding a default judgment to the trial court"). Of importance to the preservation issue here, we further explained that when a default judgment is entered in error as a matter of law, including where the complaint is not legally sufficient to state a valid claim, the "party asserting the error must first present the issue to the trial court through the appropriate post-judgment motion prior to seeking appellate review." *Id.* at 1178 (citing *Katz*, 732 P.2d at 95, for the proposition that "a trial court may err as a matter of law in entering a default judgment"). This dicta advocates different rules for

---

7. Rule 59 allows a trial court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." *See* Utah R. Civ. P. 59(a).

default judgments entered as a result of the failure to appear and default judgments entered as a discovery sanction, and seems inconsistent with the dicta in *Katz* suggesting that an invalid damages award in a default judgment entered for failure to appear can be challenged by a direct appeal of the judgment. *See Katz*, 732 P.2d at 95.

¶26    More recently, in *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071 (Utah 1998), the Utah Supreme Court again considered a challenge to a default judgment. There, the distributors of shoes sued the Brazilian manufacturer in Utah for breach of contract, promissory estoppel, and fraud. *Id.* at 1073. However, the "complaint alleged only facts related to the written contract between the parties and to [the manufacturer's] breach of the exclusive territory provision in that contract." *Id.* at 1076. After the manufacturer failed to answer, the trial court entered its default and subsequently entered default judgment. *Id.* at 1074. The manufacturer eventually moved to set aside the judgment under rule 60(b) of the Utah Rules of Civil Procedure. *Id.* The trial court denied the motion with respect to liability but granted it as to damages. *Id.* The distributors then elected to pursue damages only under their promissory estoppel claim. *Id.* After a bench trial limited to the amount of damages due under that theory, the trial court entered default judgment against the manufacturer for the amount of damages proved at trial. *Id.* The manufacturer appealed from the default judgment, claiming that the service of the complaint was defective and that the trial court erred in awarding damages for promissory estoppel because that theory was not supported by the allegations of the complaint. *Id.* In considering the second issue, the supreme court explained that "the entry of a default does not automatically entitle a plaintiff to a default judgment for the damages claimed in the complaint." *Id.* at 1076. While "all that must be shown for the entry of a default is that the defendant has failed to answer the complaint in a timely fashion," the court instructed that "a default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a

matter of law." *Id.* Accordingly, the Utah Supreme Court instructed that "[o]n appeal from a default judgment, a defendant may contest 'the sufficiency of the complaint and its allegations to support the judgment.'" *Id*. (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because the complaint alleged only the promises made in the written contract, the *Skanchy* court held that it was "error for the trial court to have awarded a judgment for damages based on a promissory estoppel theory that was not properly pled in the complaint, notwithstanding [the manufacturer's] default." *Id.* at 1078. Thus, the Utah Supreme Court reversed the judgment for damages and "remanded to the trial court for further consideration, including whether plaintiffs' election to pursue reliance damages is binding and whether [the plaintiffs] may amend their complaint without voiding the default, if those issues are raised." *Id.*

¶27    The *Skanchy* decision is unclear as to whether the manufacturer challenged the sufficiency of the complaint in the trial court. However, the copy of the trial court's order denying the rule 60(b) motion attached to the manufacturer's appellate brief suggests that it did not.[8] Nevertheless, the supreme court considered whether the complaint stated a claim for promissory estoppel. Thus, while the court did not expressly address the issue, I believe its decision supports the proposition that a party appealing from a default judgment entered as a result of the failure to appear can challenge the sufficiency of the complaint to support the judgment for the first time on appeal.

¶28    In my view, the *Skanchy* court's reliance on the Fifth Circuit Court of Appeals' decision in *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200 (5th Cir. 1975), is also instructive on

---

8.   That order states that the manufacturer did not allege any ground for relief other than mistake, inadvertence, surprise, or excusable neglect. Brief for Appellant at add., *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071 (Utah 1998) (No. 2195050).

this point. In *Nishimatsu*, the corporate and individual defendants named by a bank in a third-party complaint failed to answer and default was entered against them. *Id.* at 1204. Before the bank's motion for entry of default judgment could be heard, however, the defendants filed an answer. *Id.* Thereafter, the defendants failed to appear for depositions, did not respond to written discovery, and refused to communicate with counsel. *Id.* After several continuances of the trial date, the trial court granted the bank's renewed motion for the entry of default judgment based on the defendant's discovery abuses. *Id.* In response, an individual defendant filed a notice of appeal from the default judgment without first seeking relief under rule 60(b). *Id.* One of the grounds asserted on appeal was that the allegations in the complaint did not support the judgment. *Id.* at 1205–06. The Fifth Circuit held that despite the individual having "wilfully disregarded the rules of the judicial process and ignored the trial setting of the court below, and . . . suffer[ed] a judgment by default as a result of his deliberate and contumacious conduct," he could "attempt to defend the case on the merits for the first time in the Court of Appeals." *Id.* at 1202–03 (internal quotation marks omitted). Based on this language, I read *Nishimatsu* as supporting the right to challenge the sufficiency of a complaint for the first time on appeal from a default judgment. *Accord Eagle Fund, Ltd. v. Sarkans*, 823 N.E.2d 783, 786 n.8 (Mass. App. Ct. 2005) (relying on *Nishimatsu* in reviewing the sufficiency of a complaint to support a default judgment entered pursuant to a discovery sanction for the first time on appeal); *see also Cabral v. Diversified Servs., Inc.*, 560 So. 2d 246, 247 (Fla. Dist. Ct. App. 1990) (per curiam) (citing *Nishimatsu* as support for the statement that despite the usual rule that only issues raised in the trial court may be reviewed on appeal, a defendant may challenge the sufficiency of the complaint for the first time on appeal from a default judgment). Interestingly, the Utah Supreme Court in *Skanchy* also adopted the *Nishimatsu* court's remedy of vacating the affected portion of the judgment with instructions that the trial court permit the plaintiff bank to amend its complaint on remand. *Compare Skanchy*, 952 P.2d at 1078, *with Nishimatsu*, 515 F.2d at 1208.

¶29    This position is also consistent with that of the majority of jurisdictions that have considered the issue. *See, e.g., Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978) (reviewing appellant's claim, raised for the first time on appeal, that the complaint is insufficient to support the default judgment entered for failure to appear); *Kubick v. Federal Deposit Ins. Corp. (In re Kubick)*, 171 B.R. 658, 660 (B.A.P. 9th Cir. 1994) ("Although entry of a default judgment [for failure to appear] is usually attacked collaterally under Rule 60(b), on direct appeal a defendant can contest the legal sufficiency of allegations contained in the complaint." (footnote omitted)); *Thorp Loan & Thrift Co. v. Morse*, 451 N.W.2d 361, 362–63 (Minn. Ct. App. 1990) (holding that "a defendant in default [for failure to appear] may argue for the first time on appeal that the plaintiff's complaint did not state a cause of action or that the relief granted was not justified by the complaint"); *Caruso v. Krieger*, 698 S.W.2d 760, 762 (Tex. App. 1985) (evaluating the sufficiency of the pleadings for the first time on appeal because "[a] default judgment [entered for failure to appear] not supported by the pleadings is fundamentally erroneous"). While this approach is not universal,[9] I believe it is the better approach. Even where a defendant's

---

9. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1308 (11th Cir. 2009) (addressing a defendant's challenge to the sufficiency of a complaint after its pleadings had been struck on an issue raised before the district court, but otherwise holding that their "additional arguments that the complaint was insufficient . . . were not raised before the district court" and that because "these alleged problems with the complaint were not raised below," the court would not review them on appeal); *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 715, 717 (7th Cir. 1985) (affirming a district court's entry of default judgment for failure to appear, holding that "[appellant's] challenges [to] the sufficiency of the complaint and the adequacy of the notice and service of process . . . cannot be urged on appeal because none of them [were] presented to the district court in the first instance").

discovery sanctions have resulted in the entry of default, I would hold that the trial court may not enter default judgment without first assessing if the complaint states a claim. *See Davis v. Goldsworthy*, 2010 UT App 78, ¶ 10, 233 P.3d 496 (mem.) ("Thus, 'to enter a default judgment . . . , a judge must review the complaint . . . [to] determine whether the allegations state a valid claim for relief.'" (alteration and omissions in original) (quoting *Skanchy*, 952 P.2d at 1076)); *see also Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 940 (Utah 1998) (same); *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1194 (Utah 1996) (same), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234; 10 James Wm. Moore, et al., *Moore's Federal Practice* § 55.60[1] (3d ed. 2013) ("[O]ne effect of a default is that the factual allegations of the claim . . . are deemed to be admitted by the defaulting party. Therefore, on appeal from a default judgment, the defaulting party may not contest those facts. The appeal is limited to the legal sufficiency of the admitted facts."); Charles Alan Wright, et al., *Federal Practice & Procedure* § 2688 (3d ed. 1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").[10]

---

10. *See also Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 (11th Cir. 2007) ("[B]efore entering a default judgment . . . , the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. At that point, the defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought."); *Statewide Envtl. Serv., Inc. v. Fifth Third Bank*, 352 S.W.3d 927, 930, 932 n.7 (Ky. Ct. App. 2011) (holding that a default judgment entered as a result of striking appellants' answer "itself may be appealed directly without

(continued...)

¶30    Furthermore, I would permit a challenge to the sufficiency of the complaint to support the default judgment to be raised for the first time on appeal, irrespective of whether default was entered for failure to appear or as a discovery sanction. *See, e.g., Microsoft Corp. v. Computer Care Ctr., Inc.*, 2008 WL 4179653, at *6 (E.D.N.Y. Sept 10, 2008) (stating that, "regardless of whether default is entered as a discovery sanction or for failure to defend," the factual allegations of the complaint must constitute a legitimate cause of action). Accordingly, I respectfully dissent from the portion of the majority opinion concluding that we should not evaluate the sufficiency of the Complaint on appeal because Defendants did not raise this issue in the trial court. I would therefore consider whether Fu's Complaint states a claim upon which relief can be granted against each of the Defendants. I undertake the analysis now to illustrate my rationale for joining the majority in affirming the judgment against Rhodes, but dissenting with respect to the judgment against Naso and Evans.

## II. Sufficiency of the Complaint

¶31    I begin my analysis by evaluating whether the uncontroverted facts in the Complaint are sufficient on their face to establish a valid claim for breach of contract, fraud, negligent misrepresentation, foreclosure, and fraudulent transfer. *See generally Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998) ("[A] default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law."). In reviewing the trial court's entry of default judgment, I accept the

---

10. (...continued)
preservation of the error"); *Hunter v. Spaulding*, 388 S.E.2d 630, 634 (N.C. Ct. App. 1990) (holding that an appellant's "exception to the judgment, entered in open court, permitted him to challenge on appeal whether a default judgment could be based upon the [appellees'] complaint," and rejecting the appellees' "contention that this issue [had] not been preserved for appeal").

factual allegations in the Complaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the nonmoving party. *Cf. Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226 (employing the same standard in reviewing a trial court's decision granting a rule 12(b)(6) motion to dismiss a complaint for failing to state a claim).

¶32    As an initial matter, I note that Defendants do not challenge the sufficiency of the claims asserted against Rhodes in connection with the February 7, 2006 investment, the May 10, 2007 investment, and the May 25, 2007 investment (the First Three Investments). With respect to each of these First Three Investments, Rhodes executed the promissory note and trust deed in both his individual and representative capacity. I would therefore affirm the trial court's determination that Rhodes is liable to Fu on the First Three Investments. I separately consider, however, whether Fu has adequately pleaded a claim against Naso or Evans based on the First Three Investments and whether he has sufficiently pleaded a claim against each of the Defendants on the July 23, 2007 investment (the Fourth Investment).

A. Breach of Contract

    1. The First Three Investments

¶33    As discussed, Defendants do not contest that the Complaint states a claim for breach of contract against Rhodes with respect to the First Three Investments. Fu contends that the Complaint also states a claim against Naso and Evans for joint and several liability with Rhodes under a theory of partnership, joint venture, or partnership by estoppel. Defendants disagree, claiming that even if accepted as true, the allegations of the Complaint do not establish that Naso or Evans engaged in a partnership, joint venture, or partnership by estoppel with Rhodes. In support of their position, Naso and Evans point to email exhibits attached to the Complaint that include the reference "PGI Management, Inc." in the signature

line of the senders, and a promissary note and warranty deed attached to the Complaint which refer to "L2O Homes, LLC."[11] They ask this court to defer to the characterization of the entities in these exhibits rather than to the allegations in the Complaint, and further argue that these characterizations are inconsistent with a claim that L2O Homes and PGI Management are partnerships. *See, e.g., Davis v. Cole*, 999 F. Supp. 809, 812–13 (E.D. Va. 1998) (dismissing securities fraud claims where minutes of a corporate board meeting that plaintiff attended, which were attached to the complaint, contradicted plaintiff's allegation in the complaint that he was unaware that a corporate transaction involved terms different from those of the parties' prior oral agreement). In response, Fu contends that the exhibits simply establish Defendants' false representations about PGI Management and L2O Homes, and that such references do not constitute proof of the entities' actual form.

¶34    "The rules are clear that documents attached to a complaint are incorporated into the pleadings . . . and are fair game for this court to consider in addition to the complaint's averments." *Oakwood Vill.*, 2004 UT 101, ¶ 10. Accordingly, in determining

---

11. Additionally, Defendants claim that Fu's references throughout the Complaint to L2O Homes as "L2O Homes, LLC" are judicial admissions that L2O Homes is not, in fact, a partnership. Accordingly, they ask us to take judicial notice that L2O Homes is not a partnership. Fu disputes this determination, arguing that his use of this title is "simply a reference to that enterprise by the name used by [Defendants]." I would decline to take judicial notice because L2O Homes's form is reasonably disputed, *see* Utah R. Evid. 201(b) ("The Court may judicially notice a fact that is not subject to reasonable dispute . . . ."), and Defendants have failed to provide any information establishing that L2O Homes is, in fact, a limited liability company, *see id*. R. 201(c)(2) (providing that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information").

whether Fu has adequately pleaded claims against Naso or Evans on theories of joint venture, partnership, or partnership by estoppel, I examine the Complaint and the attached exhibits together. *See* Utah R. Civ. P. 10(c) ("An exhibit to a paper is a part thereof for all purposes.").

¶35    The Complaint alleges that Defendants were doing business as PGI Management and that Defendants "worked in concert to make the [Fourth Investment] look great, safe secure, profitable and legitimate." Paragraphs 39 and 40 of the Complaint each state that Rhodes, Naso, Evans, and Smith "held themselves out to be partners or part of a joint venture." In support, paragraph 39 references an attached email (the May 18, 2007 email) sent to Fu, Rhodes, Naso, and employees of Escrow Specialists, an escrow company hired by PGI Management, in which Smith thanked employees of the escrow company, stating, "We really do appreciate all that you continue to do for myself, [Rhodes], [Naso], and the whole PGI Team!!!" Paragraph 40 references a spreadsheet attached to the Complaint which is titled "Frank Fu—Buy-Out—Joey Naso and Rene Evans," and lists the properties allegedly owned by L2O Homes and the amounts that Fu and Rhodes would each contribute to L2O Homes. According to Fu, the combination of these references is enough to support his claim that Naso and Evans were partners, joint venturers, or partners by estoppel with Rhodes and are jointly and severally liable with him on the First Three Investments.

¶36    The Utah Legislature has defined a partnership as "an association of two or more persons to carry on as co-owners [of] a business for profit." *See* Utah Code Ann. § 48-1-3 (LexisNexis Supp. 2012).[12] "The sharing of gross returns does not of itself establish a

---

12. Sections 48-1-3, 48-1-3.1, 48-1-4, and 48-1-13 of the Utah Code have been repealed and replaced with the Utah Uniform Partnership Act, effective July 1, 2013. *See* Utah Code Ann. §§ 48-1-

(continued...)

partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." *Id*. § 48-1-4(3) (LexisNexis 2010). However, "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business." *Id*. § 48-1-4(4).

¶37     Similarly, a joint venture is defined as "an association of two or more persons to carry on as co-owners of a single business enterprise." *Id*. § 48-1-3.1(1). While some distinctions exist between a joint venture and a partnership, "the relations among joint adventurers are mainly governed by partnership law." *Nupetco Assocs. v. Jenkins*, 669 P.2d 877, 882 n.3 (Utah 1983). Because "a joint venture is in the nature of a partnership; . . . to establish such an arrangement, there must be an agreement, express or implied, for the sharing of profits." *Vern Shutte & Sons v. Broadbent*, 473 P.2d 885, 886 (Utah 1970). Accordingly, the Utah Supreme Court has identified the essential elements of a joint venture as including,

> [1] a community of interest in the performance of the common purpose, [2] a joint proprietary interest in the subject matter, [3] a mutual right to control, [4] a right to share in the profits, and [5] unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

*Ellsworth Paulsen Constr. Co. v. 51-SPR-LLC*, 2008 UT 28, ¶ 15, 183 P.3d 248 (alterations in original) (citation and internal quotation marks omitted).

---

12. (...continued)
3 to 4, -13 (LexisNexis 2010 and Supp. 2012), *repealed by* Unincorporated Business Entity Uniform Acts, ch. 353, § 310, 2011 Utah Laws 2162, 2165, 2180–203, *as amended by* Unincorporated Business Entities Act Amendments, ch. 244, § 6, 2012 Utah Laws 1036. Because the repealed version of the code has remained effective at the relevant times of this case, I cite that version.

¶38     Here, I believe that the Complaint fails to allege facts that could support a determination that Naso or Evans were engaged in a partnership or joint venture with Rhodes. Nowhere in the Complaint does Fu allege that Defendants were sharing profits from either PGI Management or L2O Homes. Likewise, Fu does not allege that they assumed a duty to share in the losses of either entity. At most, the Complaint contains a bald assertion that Naso and Evans held themselves out as partners or joint venturers. However, "a plaintiff's legal allegations are not binding" in determining whether a complaint states a claim upon which a default judgment can be based. *See Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998); *see also Landers-Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2005) ("A bald assertion that a partnership or joint venture exists is not sufficient to plead the existence of such a relationship."). The actual documents identified by Fu do not contain statements by Naso or Evans holding themselves out as Rhodes's partner. Accordingly, I would conclude that the Complaint does not support a judgment based on partnership or joint venture against Defendants.

¶39     In the alternative, Fu contends that he has alleged sufficient facts to support a theory of liability based on partnership by estoppel. The Utah Legislature has defined a partnership by estoppel as follows:

> When a person by words spoken or written or by conduct represents himself, or consents to another's representing him, to anyone as a partner, in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made who has on the faith of such representation given credit to the actual or apparent partnership, and, if he has made such representation or consented to its being made in a public manner, he is liable to such person, whether the representation has or has not been made or

communicated to such person so giving credit by, or with the knowledge of, the apparent partner making the representation or consenting to its being made.

Utah Code Ann. § 48-1-13 (LexisNexis 2010). The Complaint fails to allege facts that could support a partnership by estoppel against Evans or Naso. Although Fu points us to the May 18, 2007 email thanking the title company on behalf of the "PGI team," nothing in that email states that Evans or Naso are partners, in an existing partnership, or that they consented to such a representation. Likewise, the spreadsheet contains no indication that Naso or Evans were members of a partnership, that they were sharing profits, or that they had consented to Rhodes representing them as his partners. Thus, even interpreting the allegations and all reasonable inferences in a light most favorable to Fu, the Complaint fails to set forth factual allegations that could support a claim that Naso and Evans are jointly and severally liable with Rhodes on a theory of partnership by estoppel.

¶40    Because the allegations of the Complaint do not state a claim against Naso or Evans with respect to the First Three Investments, I believe that default judgment was improperly entered against them on those claims. *See Skanchy*, 952 P.2d at 1076 ("[A] default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law."). Accordingly, I would vacate the portion of the default judgment against Naso and Evans related to the First Three Investments.

### 2. The Fourth Investment

¶41    With respect to the Fourth Investment, Defendants argue that the Complaint fails to state a cause of action against Rhodes for breach of contract. They correctly note that, unlike the documents associated with the First Three Investments, Rhodes executed the trust deed and promissory note related to the Fourth Investment only in his representative capacity as the managing member of L2O

Homes. As a result, Defendants contend that Rhodes is not individually liable for breach of contract, and that Naso and Evans can therefore have no joint and several liability with him.

¶42    Fu did not name L2O Homes as a defendant. Furthermore, there is nothing in the Complaint that alleges facts that could support "pierc[ing] the corporate veil" and holding Rhodes personally liable under an alter ego theory. *See generally Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979) (setting forth the requirements to prove alter ego). Thus, I believe the Complaint fails to state a claim against Rhodes personally for breach of contract with respect to the Fourth Investment. Accordingly, I would hold that the Complaint also fails to state a breach of contract claim under a theory of joint and several liability against Naso or Evans on the Fourth Investment.

B. Fraud and Negligent Misrepresentation

¶43    Defendants further contend that the Complaint does not state a claim for fraud or negligent misrepresentation in connection with any of the Investments. Specifically, Defendants argue that the Complaint fails to plead these claims with particularity. To allege a claim for fraud, a party's complaint

> [m]ust allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Educators Mut. Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1032 (Utah 1995). Negligent misrepresentation is a form of fraud[13] that "occurs when a person supplies false information for the guidance of others in their business transactions, if the person supplying the information failed to exercise reasonable care or competence in obtaining it." *See Rawson v. Conover*, 2001 UT 24, ¶ 31, 20 P.3d 876.

¶44    Rule 9(b) of the Utah Rules of Civil Procedure requires a plaintiff to plead the relevant facts supporting a fraud claim with sufficient particularity to show what facts are claimed to constitute fraud. *See* Utah R. Civ. P. 9(b) ("In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."). Negligent misrepresentation claims are also governed by the particularity requirement of rule 9(b). *See Williams v. State Farm Ins. Co.*, 656 P.2d 966, 972 (Utah 1982) (holding that the rule 9(b) particularity requirement "reach[es] all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term 'fraud' in its

---

13. "Although the two claims are similar, negligent misrepresentation 'carries a lesser mental state, requiring only that the [party] act carelessly or negligently.'" *Moore v. Smith*, 2007 UT App 101, ¶ 36 n.12, 158 P.3d 562 (emphasis omitted) (quoting *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 13, 21 P.3d 219). Fraud, "on the other hand, requires the [party] to have acted 'knowingly or recklessly.'" *Id*. (quoting *Robinson*, 2000 UT App 200, ¶ 13 n.3).

> Because the facts required to prove both negligent misrepresentation and [fraud] are similar, and the only difference between the two claims is a lesser mental state for negligent misrepresentation, [I would] conclude that [a party] can be liable for only one or the other regarding each defect at issue in this case.

*See id*.

broadest dimension"). "[O]ne requirement for pleading fraud with particularity is to identify the offender." *Coroles v. Sabey*, 2003 UT App 339, ¶ 28, 79 P.3d 974. Additionally, "[f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter." *See* Utah R. Civ. P. 9(f); *see also Coroles*, 2003 UT App 339, ¶ 28 n.15 (stating that time and location are "relevant surrounding facts" regarding a misrepresentation (citation and internal quotation marks omitted)). Thus, a plaintiff's "mere recitation . . . of the elements of fraud in a complaint does not satisfy the particularity requirement." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35.

¶45 Balanced against these requirements is the general relaxation of pleading requirements under our notice pleading standards. The Utah Supreme Court has explained that the fundamental

> purpose of our liberalized pleading rules is to afford parties the privilege of presenting whatever legitimate contentions they have pertaining to their dispute, subject only to the requirement that their adversary have fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved. The functions of issue-formulation and fact-revelation are appropriately left to the deposition-discovery process.

*Williams*, 656 P.2d at 971 (citations and internal quotation marks omitted).

¶46 Defendants argue that the misrepresentations Fu alleges are all attributable to persons other than Naso or Evans and that the Complaint does not specify when the statements were made or where the parties were at the time and, thus, are not sufficiently particular. Next, Defendants argue that the Complaint does not

allege any damages proximately caused by Rhodes's misrepresentations.

¶47    I agree with Defendants that Fu's Complaint does not adequately plead claims for fraud or negligent misrepresentation against Naso and Evans. While the Complaint states that Rhodes, Naso, Evans, and Smith "represented that [Fu's] investments would be, among other things, secured by real property, safe, secure and that he would be investing property and in L2O Homes," it does not identify any specific representations made by either Naso or Evans. Instead, the Complaint makes numerous assertions in the passive voice without identifying who made the particular statements, including that "Fu was told that [Naso] and [Evans] wanted out of L2O Homes, LLC because [Evans's] health was not good enough to continue with the investment"; that "Fu was promised" that the investment "was to be secured by all the assets of L2O Homes, LLC"; and that "the assets of L2O Homes were represented to be" several pieces of property. *Cf. Coroles*, 2003 UT App 339, ¶ 28 ("For the most part, [p]laintiffs use the passive voice in this section, failing to identify exactly who made the alleged misrepresentations. . . . Without any indication of who made this statement to them, however, we can hardly conclude that [p]laintiffs have pleaded this allegation with particularity." (footnote omitted)). Thus, Fu's Complaint fails to satisfy "one requirement for pleading fraud with particularity" because it does not identify Naso or Evans as an "offender" who made a specific fraudulent or negligent misrepresentation. *See id*. Therefore, I agree with Defendants that the Complaint fails to state a claim against Naso or Evans for fraud or negligent misrepresentation.

¶48    In contrast, if the allegations in the Complaint are interpreted with all reasonable inferences in a light most favorable to Fu, the Complaint is particular enough to demonstrate a cause of action for fraud or for negligent misrepresentation against Rhodes. The Complaint asserts that "Rhodes promised a 16% return on investment with monthly payments of interest to be paid

to . . . Fu and the investment was to be secured by several pieces of property." Additionally, an email attached to the Complaint establishes that Rhodes sent Fu a list of properties that were falsely represented to be the assets of L2O Homes on July 18, 2007, and states, "No turning back. I will need the $110,000 before Monday Evening. Please." The Complaint further alleges that based upon those specifically identified representations, Fu "invested $105,000 on July 23, 2007." It also asserts that Rhodes "intended through such misrepresentations and omissions to induce . . . Fu to lend money based thereon," that Rhodes's representations were false, and that Rhodes "knowingly made the false statements." The Complaint then alleges that Rhodes stopped making payments to Fu after receiving the Fourth Investment, that "Fu has received approximately $18,500[] in payments on the $142,676[] invested," and that Rhodes never secured the properties in which Fu thought he had invested. Additionally, the Complaint alleges that Rhodes "transferred property" of L2O Homes that was supposed to be security for the Fourth Investment after Fu had advanced the proceeds.

¶49 When combined with the identification of specific representations allegedly made by Rhodes, I would hold that these allegations are sufficient to satisfy rule 9(b)'s particularity requirement, including the "relevant surrounding fact[]" of time. *See Coroles v. Sabey*, 2003 UT App 339, ¶ 28 n.15, 79 P.3d 974 (citation and internal quotation marks omitted). The Complaint references Rhodes's email solicitation to Fu on July 18, 2007, which included a list of the investment properties, thereby providing a reasonable inference that Rhodes's representation that the investment would be secured by these properties was made a mere five days before Fu made the Fourth Investment on July 23, 2007. Moreover, the promissory note for the Fourth Investment itself states, "This note shall be secured by all of the assets of L2O Homes, LLC." Thus, it is reasonable to infer from the Complaint that Rhodes made, or reiterated, these representations to Fu on the same day that he made the Fourth Investment.

¶50     Because the uncontroverted allegations of the Complaint are sufficient to establish a valid claim for fraud or negligent misrepresentation against Rhodes, I would conclude that the trial court did not err in entering default judgment against Rhodes, including in connection with the Fourth Investment. *See Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998).

C. Foreclosure and Fraudulent Transfer

¶51     Finally, Defendants contend that the Complaint fails to state a claim for foreclosure and fraudulent transfer. Because I would determine that the default judgment against Rhodes with respect to each of the Investments is supported by other theories alleged in the Complaint, I would not address this issue as it relates to him. *See Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1168 (Utah 1983) (holding that it was permissible for a party to plead two alternative causes of action, but concluding that "the court could not properly enter judgment on both theories, since that would represent a double recovery"). Moreover, I would hold that the Complaint fails to state a claim against Naso or Evans for foreclosure or fraudulent transfer with respect to the Investments.

¶52     Utah's Uniform Fraudulent Transfer Act defines fraudulent transfer, in relevant part, as

> [a] transfer made or obligation incurred by a debtor . . . (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation; [where] the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that he

would incur, debts beyond his ability to pay as they
became due.

Utah Code Ann. § 25-6-5(1) (LexisNexis 2007). Thus, the plain language of the Uniform Fraudulent Transfer Act limits its application to transfers or obligations by a "debtor." *See id.*; *see also In re Richards*, 2006 WL 4846392, at *4 (Bankr. D. Utah June 18, 2006) (finding that the Uniform Fraudulent Transfer Act was inapplicable because none of the transfers were made by a "debtor").

¶53    Because I would conclude that the Complaint does not state a claim for breach of contract, *see supra* ¶¶ 40, 42, fraud, or negligent misrepresentation against Naso or Evans, *see supra* ¶ 47, I would conclude that Fu does not have a right to a money judgment against Naso or Evans on any debt, and he therefore cannot recover against them in fraudulent transfer. *See* Utah Code Ann. § 25-6-5. Likewise, "in a foreclosure proceeding, the mortgagee's right to a money judgment is not a separate matter but a prerequisite to the equitable relief demanded." *State Bank of Lehi v. Woolsey*, 565 P.2d 413, 416 (Utah 1977); *see also id.* at 415 ("The main purpose of a mortgage is to insure the payment of the debt for which it stands as security; and foreclosure is allowed when necessary to carry out that objective." (citation and internal quotation marks omitted)). As a result, I would conclude that the Complaint does not state a claim for foreclosure or fraudulent transfer against Naso or Evans.

¶54    However, rather than simply vacating the judgment against Naso and Evans, I would follow the lead of the Utah Supreme Court in *Skanchy* and remand with instructions to allow Fu an opportunity to amend the Complaint. *See Skanchy*, 952 P.2d at 1078. If we were simply to vacate the Order and Judgment in its entirety or to modify it to exclude Naso and Evans from joint and several liability, as suggested by those parties, we would place Fu in a worse position than if Defendants had not been sanctioned. If Defendants had challenged the sufficiency of the Complaint in the

trial court, Fu likely would have been afforded an opportunity to amend the Complaint to cure any deficiencies. *See* Utah R. Civ. P. 15(a) (stating that "leave [to amend] shall be freely given when justice so requires"). Thus, I agree with Fu that it would not be "equitable to allow parties to fail to comply with the rules of procedure and hinder the prosecuting of claims against them and then be able to evade the sanction." Such a decision would be contrary to the purpose of rule 37. *See id.* R. 37(c) ("The court may make orders regarding disclosure or discovery or to protect a party or person from discovery being conducted in bad faith or from annoyance, embarrassment, oppression, or undue burden or expense, or to achieve proportionality . . . ."); *see also Transamerica Title Ins. Co. v. United Res., Inc.*, 471 P.2d 165, 167 (Utah 1970) ("The purpose of the discovery . . . procedures provided for in our rules is to furnish a method for searching out and facilitating the resolution of issues which are not in dispute, and of settling the rights of the parties without the time, trouble and expense of a trial. It is indispensable to the carrying out of that purpose that parties furnish essential information when it is requested in conformity with the rules of procedure." (footnote omitted)).

¶55    Accordingly, I would remand to the trial court with instructions to grant Fu leave to amend his Complaint in an attempt to assert proper claims against Naso and Evans, in which event Defendants may respond. *See Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1078 (Utah 1998) (holding that the complaint did not state a claim for promissory estoppel, and remanding "to the trial court for further consideration, including whether plaintiffs' election to pursue reliance damages is binding and whether [the plaintiffs] may amend their complaint without voiding the default, if those issues are raised"); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (holding that the trial court erred in entering a default judgment because the complaint failed to state a claim but remanding with instructions to allow appellee "to amend its complaint, in which event [appellant] may respond"); *Hauspie v. Stonington Partners, Inc.*, 945

A.2d 584, 587–88 (Del. 2008) (reversing a default judgment entered as a discovery sanction in part because fraud allegations in the complaint were not sufficiently pleaded and remanding to the trial court "with instructions to grant appellees leave to amend their complaint").

¶56    In sum, I respectfully dissent from the portion of the majority opinion holding that we should not evaluate the sufficiency of the Complaint on appeal because Defendants did not raise this issue in the trial court. I would consider whether Fu's Complaint states a claim upon which relief can be granted against each of the Defendants. As a matter of law, I believe that the Complaint adequately supports a default judgment against Rhodes on each of the Investments. I would therefore affirm the trial court's entry of default judgment against Rhodes. However, I believe that the Complaint fails to set forth factual allegations that could support any claim against Naso or Evans for breach of contract, fraud, negligent misrepresentation, foreclosure, or fraudulent transfer. Therefore, I would determine that the trial court erred in entering judgment against Naso and Evans, but remand to the trial court to allow Fu the opportunity to amend his Complaint.

———————